### TOLAND, ADM'R, *v.* STEVENSON.

DECEDENTS' ESTATES.—*Contract.*—*Services Performed After Decedent's Death.* —The estate of a decedent is liable for services performed for his family after his death, under a contract therefor, made with him in his lifetime.

From the Wabash.Circuit Court.

*F. M. Eagle,* for appellant.

*C. Cowgill,* —. *Shively* and *C. E. Cowgill,* for appellee.

WORDEN, J.—The appellee filed his claim against the estate of Joseph C. Singer, deceased, stating therein, "that, on the 25th day of April, 1875, he agreed, to and with the said Joseph C. Singer, who was then sick himself, together with several members of his family, with erysipelas, to nurse and attend on said deceased and his family while such sickness lasted, and such services should be required; and that, pursuant to such agreement, he

did render services to said Singer and his family, as is set out and stated in a bill of particulars filed."

The bill of particulars contains a statement of services rendered from April 25th to June 15th, amounting to one hundred and twenty-seven dollars.

The administrator allowed eighteen dollars of the claim, but refused to allow the residue, and the claim was transferred to the issue docket for trial, and the cause was tried by the court, who found for the plaintiff the amount of his claim, and rendered judgment therefor.

The case is before us on the evidence, which, in relation to the plaintiff's claim, was as follows:

Sarah Long testified as follows:

"Dr. Wells brought the plaintiff to our house on the 23d or 24th day of April, 1875, to nurse and take care of us, and he took care of us until we got well, about the middle of May, 1875; three or four of us were sick; the little girls got sick about the 1st of April, 1875; when the plaintiff first came, the decedent, myself and one of the little girls were sick, and the decedent died on the 30th day of April, 1875; after the decedent's death, our family consisted of myself and my four children by former husband; I am now married to John Long; the plaintiff took care of us until the middle or latter part of June, 1875; my name is Sarah Long; it was Sarah Singer; I am the widow of the decedent, Joseph C. Singer; two of the children were sick the last of May or first of June, 1875; one week we had help; I was sick till the last of June, 1875."

Dr. William G. Wells testified:

"I was at the decedent's residence on April 23d, 1875; he asked me if I knew of any one he could get as a nurse to take care of them, and asked me, if I could, to procure such help; on the 24th day of April, 1875, I got the plaintiff to attend on them as nurse; at the time, the decedent, his wife and another were sick; at first they had no help but the plaintiff; I persuaded the plaintiff to go

Toland, Adm'r, *v.* Stevenson.

there; the decedent made a contract with the plaintiff to wait on them; the decedent used these words to the plaintiff: 'I want you to stay with us till we are well, and you shall be well paid;' the decedent told that to the plaintiff the first day he came; it was on the 24th day of April, 1875; he mentioned it, perhaps, once or twice afterwards; on the 24th day of April, 1875, I employed the plaintiff to nurse them, as the agent of the decedent, at his request and in obedience to his instructions; he continued to nurse them to June 13th, 1875; the decedent died on April 30th, 1875; he did not talk about dying; I never told him that he would die."

The appellant claims that the estate can only be liable to the plaintiff for such services as he performed before the death of the decedent; in other words, that the death of the decedent put an end to the contract.

We think from the evidence, that it may well have been found, that there was a contract between the plaintiff and the decedent, by which the plaintiff was to render his services to the family until they should have recovered from the disease, for which he was to be paid by the deceased. A disease was prevailing in the defendant's family, which, as we may suppose, soon proved fatal to himself. It is not unreasonable to suppose, that the family needed some one to nurse and take care of them.

Though the deceased did not talk about, or perhaps anticipate, death, at the time he made the contract, we will not do him the injustice of assuming, contrary to the plain import of the language used by him, that he intended to employ the plaintiff until the family should be well, only on the condition that he himself should live to get well, or only during his life.

The contract, fairly interpreted, meant that the plaintiff should perform the services until the family should be well, though the deceased, or any other member of the family, might die in the mean time. The death of one

would not render the plaintiff's services any the less necessary to the others.

The services were performed under a valid contract made with the deceased, by which he became liable to pay therefor, and his estate is bound in like manner.

The contract was not discharged or terminated by the death of the deceased. "Contracts," says Mr. Chitty (2 Chit. Cont., 11th Am. ed., p. 1,411), "which depend upon the existence, or the personal qualities, skill, or services of one of the parties are, in general, discharged by the death of that party."

The contract here, as we have seen, did not depend upon the continued existence of the deceased. The plaintiff's services were to be rendered, not to the deceased alone, but also to the other members of the family. If the plaintiff had died before the completion of the contract, his death would probably have discharged it, because the services which, perhaps, required personal skill, could not be performed by his executor. But the contract required nothing on the part of the deceased but payment for the services to be rendered under it, and his death could not discharge it. A contract to pay money at a future time, or on a future contingency, survives the obligor, and binds his representatives. *White's Executors* v. *The Commonwealth*, 39 Pa. St. 167; *Wentworth* v. *Cock*, 10 A. & E. 42; *Bradbury* v. *Morgan*, 1 H. & C. 249.

In the case last cited, the following guaranty was executed:

"I request you will give credit in the usual way of your business to L., and in consideration of your doing so I hereby engage to guaranty the regular payment of the running balance of his account with you, until I give you notice to the contrary, to the extent of £100 sterling.

"*Held*, that the guaranty was not a bare authority, but

a contract, and therefore the executor of the guarantor was liable for goods supplied after his death."

The judgment below is affirmed, with costs.