John S. Ross, Appellant, *v.* Elizabeth Hardin et al., Administratrix, etc., Respondents.

The rule of law that, from a request to perform services, an implied promise arises to pay what the services are worth, does not apply where the services are rendered by one in the employ of the person making the request; in such case the implication is that the services were rendered under the contract of employment, particularly if the services are of the same character as those embraced in that contract.

As to whether a contract may be made by a person during his life, for the preservation and safety of his property after his death, and until administrators are appointed, *quære.*

If such a contract can be so made with an employe who has had similar services to perform during the life of the employer, unless the parties stipulate for a different compensation, it will be presumed that the same rate of compensation paid before the death of the employer continues thereafter.

Plaintiff prior to the death of H., defendant's intestate, had been in his employ as confidential clerk, at a salary of sixty dollars per month. H. owned a large amount of stocks, bonds, securities and money, which were kept in a box deposited in a bank. Plaintiff frequently had charge of them; he brought the box to the house of H at his request. Two days before his death, H. told plaintiff to take charge of the box, and put it in the Safe Deposit Company; this he did. Eight days after the death

of H., and upon the appointment of defendants as administrators, plaintiff delivered the box to them. In an action to recover the value of the services so rendered, plaintiff was nonsuited. *Held,* that conceding the employment valid, and the estate liable, plaintiff was entitled to recover only at the same rate of compensation he received during the life of H., and the non suit was not strictly correct; but as this claim was not made upon the trial or in this court, plaintiff claiming to be entitled to compensation as upon a *quantum meruit,* the maxim "*de minimis non curat lex*" would be applied; judgment, therefore, affirmed.

(Argued November 17, 1879; decided November 25, 1879.)

APPEAL from judgment of the General Term of the Superior Court, of the city of New York, affirming a judgment in favor of defendant, entered upon an order nonsuiting plaintiff on trial, and affirming an order denying a motion for a new trial.

This action was brought to recover as upon a *quantum meruit,* for services alleged to have been rendered by plaintiff, at the request of George Hardin, defendant's intestate, in taking charge of and caring for his property.

The facts are sufficiently set forth in the opinion.

*Nathaniel C. Moak,* for appellant. Where one person performs services for another, the law presumes and implies a promise on the part of him, at whose request the services are performed, to pay the person performing them what they are, under all the circumstances, reasonably worth. (*Moore* v. *Moore,* 3 Abb. Ct. App. Dec., 312; 21 How. Pr., 223; *Darling* v. *Halsey,* 12 Hun, 90; *Gallagher* v. *Vought,* 8 id., 87, 88; *Woodward* v. *Bugsbee,* 2 id., 128; *Thornton* v. *Grange,* 66 Barb., 507; *Lewis* v. *Trickey,* 28 id., 387, 390, 391; *Williams* v. *Hutchinson,* 3 N. Y., 318; Wood's Master and Servant, § 67.) The defendants were liable as administrator and administratrix upon the contract made by George Hardin, the deceased. (*De Valengin* v. *Duffy,* 14 Peters, 290; *Baring* v. *Putnam,* 1 Holmes [U. S.], 261; *Bell* v. *Lewis,* 44 Ind., 129; *Taylor* v. *Mitchell,* 36 Leg. Inst., 97; *Foland* v. *Stevenson,* 59 Ind., 485; *Bradbury* v. *Morgan,* 1 Hurl. & Colt., 249; *Fennell* v. *McGuire,* 21 U.

C. C. Pl., 134; *Foland* v. *Wells*, 59 Ind., 529; *McDaniel* v. *Parks*, 19 Ark., 671; 2 Williams on Exrs. [6th Am. ed.], 1824–1830, pp. 1721–1728, bottom paging; *Smith* v. *Wilmington*, 83 Ill., 498; *Segar* v. *Atkinson*, 1 H. Bl., 102; *Powell* v. *Graham*, 7 Taunt., 580; 2 Eng. C. L. Rep., 501; *Fitzhugh* v. *Fitzhugh*, 11 Gratt., 302; *Petrie* v. *Voorhies*, 18 N. J. Eq., 290; *Taylor* v. *Taylor*, 3 Bradf., 54; *Davis* v. *Stover*, 58 N. Y., 474; 14 Peters [U. S.], 290; 1 Holmes [U. S.], 261; *Lewis* v. *Trickey*, 20 Barb., 387; *Ex parte Tindal*, 8 Bing., 404; 3 Redf. on Wills, 274, chap. 10, § 39; id., 277; *Hyde* v. *Skinner*, 2 P. Wms., 196, 197; *Frederick* v. *Frederick*, 1 id., 710, 721; *Wilkes* v. *Ferris*, 5 J. R., 335; *Gray* v. *Davis*, 10 N. Y., 285; *Conner* v. *Shaw*, 3 M. & W., 350, 352; *Prior* v. *Hembrow*, 8 id., 889, 890; Broom's Leg. Max., 704, 705; *Taylor* v. *Taylor*, 3 Bradf., 54; Williams' Exrs., 1466–1619; Sugden's V. & P., 180; 10 Ves., 597, 614; *Wentworth* v. *Cock*, 10 Ad. & Ell., 42; 37 Eng. C. L., 47; 2 R. S. at Large, 117, § 2; 1 Parsons on Con. [6th ed., 1873], 130, 131, note 7; Redf. L. & Pr. Surrogates' Courts, 248, art. 6, § 2; *Bachelder* v. *Fisk*, 17 Mass., 469; *Stewart* v. *Eden*, 2 Cai., 121, 128–129; *Ord* v. *Fenwick*, 3 East, 104.) Plaintiff having taken care of the property of the deceased was entitled to compensation for his services without any agreement to pay for the same. (*Sheldon* v. *Sherman*, 42 N. Y., 84; 42 Barb., 368, 372.) When the facts of a case are undisputed, but the inference to be drawn from those facts can be decided for either side, the case, under such circumstances, is not one of law for the court, but must be submitted to the jury for their determination. (*Howell* v. *Gould*, 3 Keyes, 422; *Hackford* v. *N. Y. C. R. R. Co.*, 53 N. Y., 654; *Smith* v. *Coe*, 55 id., 678; *Nousry* v. *Lord*, 2 Keyes, 617.) The jury were justified by the evidence in finding a special contract by deceased employing plaintiff. (*Sheldon* v. *Sherman*, 42 N. Y., 484; affirming 42 Barb., 368, 372.) Executors and administrators may bind the estate by a promise to pay for services which were necessary for its protection and preservation. (*Davis* v. *Stokes*, 58 N. Y.,

474; *Benjamin* v. *Taylor*, 12 Barb., 328.) There was such a promise founded upon a good consideration which bound the estate. (14 Peters [U. S.], 290; 1 Holmes [U. S.], 261.)

*John E. Burrill*, for respondents. The only cause of action which could be proven, or for which a recovery could be had herein, was one which accrued on a contract for which the deceased in his life-time was liable, and for which the defendants were liable in their representative capacity. (*Benjamin* v. *Taylor*, 12 Barb., 328; *Austin* v. *Munro*, 47 N. Y., 360; *Ferrin* v. *Myrick*, 41 id., 315, 320.) The consideration arose after the death of the intestate, and the cause of action, if any, was against the defendants individually, and not in their representative capacity. (41 N. Y., 319, 320; *Demott* v. *Field*, 7 Cow., 58; *Meyer* v. *Cole*, 12 J. R., 349; *Gillett* v. *Hutchinson*, 24 Wend., 184.) Even if the administrators would have been entitled to charge or reimburse themselves out of the estate, for moneys paid in satisfaction of such claim, it does not follow that an action could be maintained against them as administrators. (*Ferrin* v. *Myrick*, 41 N. Y., 325; *Austin* v. *Munro*, 47 id., 366.) If the alleged agreement between Ross and Hardin was to take effect upon the death of Hardin, it was not a valid or binding contract either upon Hardin or upon his representatives. (*Harris* v. *Clark*, 3 N. Y., 93, 98, 107, 113; Chitty on Cont., chap. 1, § 1, sub. 2; Gratuitous Promise [marg. p.], 50–52; *Kellogg* v. *Olmstead*, 25 N. Y., 189; *Van Allen* v. *Jones*, 10 Bosw., 360; *Hunt* v. *Bloomer*, 5 Duer, 202.)

Church, Ch. J. The plaintiff's counsel made several requests to submit questions of fact to the jury, the refusal of which is claimed to be error, and also the refusal to charge based upon the hypothetical finding of the jury.

1st. Whether the services claimed for were rendered by the plaintiff, under a promise expressed or implied by the intestate that he should be paid therefor, and if they should so

find, the court was requested to charge that the plaintiff was entitled to recover what the services were reasonably worth.

2nd. Whether such services were rendered and performed, under a new and independent contract by the deceased, with the plaintiff, to pay therefor what such services were reasonably worth, and if they should so find, requested the charge that the plaintiff was entitled to recover accordingly.

3rd. Whether the services were within the reasonable scope of the plaintiff's employment as confidential clerk, and if they should so find, and that they were to be paid for, then the measure would be the reasonable value of the services. These requests were made in different forms, and an exception duly taken to each refusal.

The case has been three times tried in the Superior Court. Upon the first two trials the plaintiff had a verdict, and upon the last a nonsuit was granted. The question presented, whether the court erred in granting a nonsuit, involves the questions presented in the requests. If there was any material question of fact which ought to have been submitted, it was error to direct a nonsuit.

The deceased was a man of large wealth, and the plaintiff had been his confidential clerk for eleven years, at a salary of sixty dollars a month. The property, valued at $1,500,000, in stocks, bonds, securities and money, was kept in a tin box, and had been deposited in the Bank of the State of New York. On the 4th of March, 1872, the intestate directed the plaintiff to bring the box to his house, which he did. The intestate was then sick and very low. He opened the box, and locked it, and gave the key to the plaintiff, and there is evidence tending to show that he told the plaintiff " to take charge of the box, and put it in the Safe Deposit Company, until James Gray arrives from Ireland."

He also told him to separate the securities to the extent of half a million of dollars, and get another box, and put James Gray's securities in it. The box remained at the

house until the sixth of March, when the intestate died. The plaintiff then took the box to his own house, where it remained over night, and the next day he deposited it in the Safe Deposit Company in his own name, where it remained until the fourteenth of March, when he delivered it to the defendants, who had been appointed administrators. The plaintiff testified that a large portion of the securities stood in his own name (for convenience of transfer probably), and he also testified as follows :

A. " I was the only clerk he had ; I did all his business.·

Q. Had you charge of the securities ?

A. Yes, sir, repeatedly.

Q. Were they intrusted to your care ?

A. Yes, sir, for weeks at a time.

Q. During the whole time ?

A. Yes, sir."

From these facts the plaintiff's counsel contends that the jury would have been justified in finding that this was an independent agreement, not connected with his employment as clerk, and that it was intended to continue after the death of the intestate. Even if the last position is correct, it would not necessarily entitle the plaintiff to extra compensation, unless the first was also found. As to the first proposition giving the most favorable construction to the evidence on the part of the plaintiff as we are required to do in considering the propriety of a non suit, it seems to me that there is nothing in the facts developed, upon which such an inference can be predicated. There was not a word said by the intestate indicating that the service to be performed by the plaintiff was regarded by him as different or more onerous in any respect, than the duties which for eleven years he had performed, and still less if possible, that he intended to incur any additional obligation for such service. Nor is there anything in the circumstances evincing such intention.

Although the intestate was very low, and may have apprehended death within a short period, he was able to comprehend the nature and extent of his property, and indicated the

securities which he wished set apart for Mr. Gray. He then directed his clerk to put the box in the Safe Deposit Company. It is argued that the duty imposed was different from his ordinary duties as clerk, and therefore that an inference may be drawn of an intention to make an independent contract. How different? Not in the kind of service, for the plaintiff had done the same thing repeatedly for eleven years; not in the labor, for it consisted merely in taking the box to the depository which the plaintiff had before often done. It is said that it greatly increased his responsibility. If this was so it would not be decisive, but I am unable to see wherein his responsibility was increased. He was not required, and had no authority to invest the securities, or in any manner use them. It was not contemplated even that he should have the personal custody of the property. The direction was to take the box to a safe depository. It was not contemplated that he should take the box to his own house, over night, and if anything had happened to it by reason of his doing so, he might have been in fault. When the box was deposited, he was relieved from personal risk or responsibility for its safety. The learned counsel for the plaintiff invokes the rule of law that from a request to perform services, an implied promise arises to pay what such services are reasonably worth, and in some cases the law will imply a request from the beneficial nature of the services, or their acceptance by the party. (*Gallaher* v. *Vought*, 8 Hun, 87; *Woodward* v. *Bugsbee*, 2 id., 128; *Williams* v. *Hutchinson*, 3 N. Y., 318; Wood's Master and Servant, § 67.) This rule has no application when the request is to a member of the promissor's family, for the reason that the relation between the parties repels the presumption of a promise to pay, and raises a contrary presumption that the service was to be gratuitous. (Id., § 72.) Nor does the rule apply when the services are rendered by one in the employ of the person for whom they were rendered. In such cases the law implies that the services were rendered under the contract of employment, unless the con-

trary be shown, and this implication is much stronger if the services are of the same character as those embraced in the contract.    In *Carr* v. *Chartier's Coal Co.* (25 Penn. St., 337), a secretary of a coal company attempted to retain $200 for "extra services." This was refused, Judge Black saying, that he was bound to do "whatever his employers may have occasion to employ a secretary about." The plaintiff had the key, and was authorized if not required to deposit the box before the testator died. The service commenced therefore during the testator's life, and it is claimed that it was intended to be continued after his death. The evidence to establish this is slight, but assuming that such an inference can be drawn, then two questions arise. One is whether it is lawful for a person to contract for the care of his property after his death, and if he may, and this is deemed such a continuing contract, whether the plaintiff is entitled to compensation as upon a *quantum meruit*, or at the same rate agreed upon as clerk. It is very clear, I think, that a person cannot by a contract supersede or contravene the laws in respect to the management, and devolution of property in cases of intestacy. The statute has provided a mode of doing this by will, but the requirements of the statute must be complied with. But a contract made during the life of a person, commencing previous to his death, or even at his death for the preservation and safety of his property until the lawful authority is exercised by the appointment of administrators, is not so objectionable, and I do not see either in considerations of public policy, or in reason, why this may not be done, but it is not necessary definitely to determine the point. If it may be done the estate would be liable, and the administrators might be sued as such. (*Foland* v. *Stevenson*, 59 Ind., 485; *Bradbury* v. *Morgan*, 1 Hurl. & Colt., 249; *Collins* v. *Weiser*, 12 Serg. & Rawle., 97; *Hill* v. *Robeson*, 2 Smedes & Marsh., 541.)

Giving the plaintiff the benefit of this position, the question is, at what rate was compensation to be made. It will not do to say that the parties are presumed to know that

their previous contract ceased upon the death of the intestate, and therefore that they must have intended a *quantum meruit.* The proposition itself is based upon the assumption that it did not cease, but was intended to continue after death, and if so, it must be presumed that the same rate of compensation continued after, as before, unless the parties stipulated for a different compensation. As no such stipulation was made the presumption of law must prevail. One reason for the presumption is, that if an increase was expected by the employed, he would have applied for it to his employer, as would be natural and usual in human dealings. By making no such application, and his employer not indicating that he intended to pay any additional compensation, the inference of fact, as well as of law is very persuasive that neither party intended that it should be increased. (*Ranck* v. *Albright*, 36 Penn. St., 367; *Wallace* v. *Floyd*, 29 id., 184; *N. H. Iron Factory* v. *Richardson*, 5 N. H., 294; *Huntington* v. *Claflin*, 38 N. Y., 182.) This view disposes of all the grounds urged for maintaining the action. All that can be said in respect to the relations of the plaintiff to the property after the death of the deceased is that it increased somewhat the temptations to misappropriate or fraudulently abstract it. It was easier after that event to embezzle the property than before, although it appears that the plaintiff had previously ample opportunity for converting the property. It was his duty to keep it safely for the benefit of those to whom it belonged. He performed his duty honestly and faithfully, and is entitled to credit for it, and the meed of praise is especially due to him for performing his duty under circumstances of temptation. It would have been very appropriate as a suitable recognition of his integrity, if those interested in this large estate had presented him a generous and very liberal gratuity, but we are confined to a consideration of his legal rights, and it cannot be adjudged upon the facts appearing in this case, that he has a legal cause of action, beyond his salary as clerk, without establishing a dangerous precedent.

The plaintiff was entitled to recover apparently for eight days salary, at sixty dollars a month, and for that reason the non suit was not strictly correct, but this claim was not made either at the trial, or in this court, and it would not benefit the plaintiff to grant a new trial to enable him to recover so small a sum, and the maxim *de minimis non curat lex*, may be applied.

The judgment should be affirmed.

All concur.

Judgment affirmed.