MONROE COUNTY.—HON. J. A. ADLINGTON, SURRO-
GATE.—January, 1888.

## LANEY *v.* LANEY.

### *In the matter of the estate of* JAMES LANEY, *deceased.*

A provision in a partnership agreement, that the death of a member shall not work a dissolution, but that the business shall continue and be conducted by the survivors until a day specified, is invalid and abortive,—it being beyond the competency of the parties thus to modify or abrogate the law of wills and intestate distribution.

MOTION to confirm referee's report, on judicial settlement of account of Enos G. Laney, administrator of decedent's estate.    Decedent, the accounting party and one Barker, in February, 1883, executed an agreement of partnership providing that the same should continue for seven years, and not be dissolved by the death of any partner, but be carried on by the survivors, and the sum of $2,000, be annually deducted from the deceased partner's share of the profits.

The administrator, on filing his account, assumed the validity of the agreement, according to which the partnership would continue until 1890, and that he was entitled to retain the decedent's money in the business, and account for the net income only, after

deducting $2,000 per annum.   To this the widow and children objected, contending that the death terminated the partnership, and that, eighteen months having expired since the death, the principal and income should be distributed.

H. L. BARKER, *and* THEO. BACON, *for administrator.*

J. & Q. VAN VOORHIS, *for widow.*

F. M. GOFF, *special guardian.*

THE SURROGATE.—The principal question in this proceeding is whether or not the care, custody, management and control of an *intestate's* property can be given for a number of years after his death to such decedent's surviving partners, by a clause in the co-partnership agreement providing that the death of a member of the firm shall not work its dissolution, but that the partnership business shall nevertheless continue and be conducted by the survivors until a day specified in said agreement.   The time during which, under this present agreement, the intestate's personal representatives will be excluded from all power over his personalty is about three years.

I am inclined to answer the above question in the negative.   If a man wishes to direct the control and management of his estate after death, he can do so, within certain prescribed limits by making his will, according to law.   If he dies intestate, he is held to prefer to have his estate managed and settled according to the statutes governing the distribution of intestates' estates.

On this subject, CHURCH, Ch. J., says, in Ross v. Hardin (79 *N. Y.*, 91): "It is very clear, I think, that a person cannot by contract supersede, or contravene, the laws in respect to the management and devolution of property in case of intestacy. The statute has provided a mode of doing this by will, but the requirements of the statute must be complied with." In Nat. Bank of Newburgh v. Bigler (83 *N. Y.*, 57), the Court of Appeals, while declining to decide as to the scope or validity of such a provision, says: "The contract was certainly intended, in some degree, to supplant and modify the legal rules which restrain the action of the survivor." See, also, Gilman v. McArdle (65 *How. Pr.*, 337). Some of the text book writers assert that such an agreement is valid, but, so far as I have been able to discover, they are not supported by the decision of any court on a case in point.

Furthermore, the effect of this agreement, if valid, is to suspend the absolute ownership of the larger part of the decedent's personal property for a definite period of time, in a way which would be void if attempted to be done by will (Stewart v. Hamilton, 37 *Hun*, 19, 21; Moore v. Moore, 47 *Barb.*, 257, 260). If such an agreement is valid for three years after death, it must be equally so for one hundred years, and thus by partnership agreements, appearing valid on their face, the whole law relating to wills and trusts could be circumvented and rendered practically of no effect.

While I do not agree with the referee, as to some of his conclusions in the proceeding, I think the re-

sult at which he arrives is fair and just, and therefore confirm his report.