*Copartnership — death of one partner and continuance of the firm business — construction of the terms of the articles of copartnership as to deductions for the lost services of the deceased partner, charges of interest on overdrafts, etc.*

Under articles of copartnership, entered into by one James Laney, since deceased, with Enos G. Laney (since the sole acting administrator of his estate) and one Barker, it was provided that "in case of the death of any of the parties before the expiration of said term the copartnership shall not be dissolved, but shall continue and be conducted by the survivor or survivors under the same firm name to the expiration of said term, and the share of the profits of that part of the capital stock belonging to such deceased partner, less the sum of two thousand dollars, the agreed value of his services per year, shall be paid as often as once in each year to his personal representatives;" and it was further provided that "in case any of the parties shall have any amount invested in said business, in excess of his share of the capital stock, he shall be allowed and paid interest at the rate of six per cent per annum on such excess for the time it shall be so invested before any division of the profits."

*Held*, on an accounting had subsequent to the death of James Laney, that there should be deducted from each partner's investment, at the beginning of the year, his drafts during the year, and there should be added thereto his share of the profits.

That, in the case of the deceased partner, it was the difference, between this result and the money in excess of the prescribed contribution of $20,000, which the deceased had in the business at the time of his death, upon which the interest, which was to be charged or credited, under the terms of the articles of copartnership, was to be computed.

That the $2,000 which, by the terms of the copartnership, was to be deducted from the share of the profits of the deceased partner, belonged not to the surviving partners, but to the copartnership, and should be distributed equally between the three interests represented by the copartnership.

That it was competent for parties, when creating the relation of copartnership between themselves, to provide that the same relation should continue between the survivors of them and the representatives of any deceased partner for a time to be specified, under the same firm name, on the same terms and for the same purposes as the original copartnership.

APPEAL by Enos J. Laney, administrator, etc., from a decree entered on the 21st day of February, 1888, in the Surrogate's Court in Monroe county.

*Theodore Bacon,* for the administrator, appellant.

*Frank M. Goff,* for the special guardian, respondent.

*Q. Van Voorhis,* for the widow, respondent.

DWIGHT, J.:

At the time of his death, March 1, 1885, the deceased, James Laney, with Enos G. Laney, now the sole acting administrator of his estate, and one Barker, were partners in business under articles which fixed the term of the copartnership at seven years from February 8, 1883, and provided that "in case of the death of any of the parties before the expiration of said term, the copartnership shall not be dissolved, but shall continue and be conducted by the survivor or survivors, under the same firm name, to the expiration of said term; and the share of the profits on that part of the capital stock belonging to such deceased partner, less the sum of $2,000, the agreed value of his services per year, shall be paid as often as once in each year to his personal representatives."

The capital stock was fixed at $60,000, to be contributed, after February 8, 1884, by the three partners in equal shares. Profits and losses were to be shared equally, and were to be ascertained by an inventory and statement made on or about the eighth of February in each year. The articles contained 'the further provision: "In case any of the parties shall have any amount invested in said business, in excess of his share of the capital stock, he shall be allowed and paid interest at the rate of six per cent per annum on such excess for the time it shall be so invested, before any division of the profits."

The foregoing are the only provisions of the contract which bear upon the questions arising on this appeal. The business of the firm was uniformly profitable. By the accounting, between the partners, of February, 1885, shortly before the death of James Laney, it appeared that he had in the business (after crediting to him his share of the profits of the preceding year), in excess of his share of the capital stock, about $14,000. This excess was, apparently, reduced by drafts from month to month (no profits being credited during the year), until, at the close of the year, its apparent amount was less than $9,000. But upon crediting to the estate, at the

beginning of the next year, its share of the profits of the year just closed, its excess of contribution was shown to be $14,700. Similarly the excess of the contribution of the estate on the 5th of February, 1887, was $12,600. Barker began the year 1885 (February 9th), with a deficiency of about $500. His drafts, during the year, amounted to about $5,500 ; but upon crediting him his share of the profits of the year his contribution was more than made good, and he began the year 1886 (February 6th), with a small excess. His drafts during that year were about $10,000, and the credit of profits for the year still left him, at the accounting of February 5, 1887, deficient in the sum of nearly $4,000.

E. G. Laney began the year 1885 (February 9th), with an excess of $2,900, and on both the accountings of 1886 and 1887, after charging him with the drafts and crediting him with the profits of each preceding year, his contribution was still slightly in excess of $20,000.

The questions arising upon this appeal relate, first, to the method of ascertaining the amount of excess or deficit in the contribution of the several partners (including the estate of James Laney), to the capital stock ; second, to the allowance to be made to the estate for the excess of its contribution ; and, third, to the disposition to be made of the sum of $2,000 a year, paid by the estate of the deceased partner as the stipulated equivalent for his services in the business of the firm.

*First.* The account rendered by the administrator proceeds by the method of ascertaining the amount of the contribution of each partner, at the beginning of each year, by charging him with his drafts and crediting him with his share of the profits of the preceding year. The decree of the surrogate, on the other hand, adopting the method of the referee, deducts the average of the monthly drafts of each partner from the amount to his credit at the beginning of the year, and treats the balance as his average contribution for the year to the funds of the copartnership. It makes no application of profits until the beginning of the next year, when it adds each man's share of profits to his last monthly balance to obtain the amount of credit with which he begins the year which is to follow.

HUN — VOL. L 3

*Second.* The theory of the account rendered by the administrator is to credit each partner (including the estate of the deceased), whose contribution is in excess of the stipulated amount, with interest on such excess, and to charge the partner whose contribution is deficient interest on the deficiency. The decree of the surrogate, on the other hand, holds the administrator chargeable with a share of the profits of the business proportioned to the entire contribution of the estate to the funds of the copartnership.

*Third.* The account of the administrator treats the $2,000, which, by the terms of the agreement, was to be deducted from the share of profits payable to the estate of the deceased partner, as belonging to the surviving partners, and to be divided between them. The decree, on the contrary, regards that sum as belonging to the firm, and to be divided between its three members; and, accordingly, charges the administrator with one-third of that amount in each year.

Counsel for the respondents are disposed to argue here, as apparently they did before the referee, that the agreement for a continuance of the copartnership, after the death of a member, was unlawful and ineffectual; that the copartnership was immediately and necessarily dissolved by the death of James Laney, and no copartnership continued thereafter except of the survivors for the sole purpose of closing up the business of the firm; that the administrator, as such and also as one of the survivors of the copartnership, became a trustee *de son tort* in permitting any portion of the funds of the estate to remain invested in the business of the firm, and, *consequently*, is chargeable with the profits earned by the entire investment, if such profits exceed the interest on the amount invested. We do not regard the discussion of dissolution or non-dissolution, whether the old partnership was continued or a new one was formed under the agreement, as a very profitable one. It seems to be a question of names rather than of substance. It probably finds its solution in the statement of Mr. Parsons in his work on Partnerships (pp. 438, 439), which is quoted by RUGER, Ch. J., in *Kennedy* v. *Porter* (16 N. Y. S. Rep., 627), when, speaking of provision in contracts against the dissolution of the partnership by death, he says: " All these agreements and arrangements, and all that can be made for a similar purpose, are, in fact, only bargains for the creation

of a new partnership when the old one ceases to exist." But that it is competent for parties, when constituting the relation of partnership between themselves, to provide that the same relation shall continue between the survivors of them and the estate or representatives of a deceased partner, for a time to be specified, under the same firm name, on the same terms and for the same purposes as the original copartnership, has never, so far as we know, been denied in any adjudicated case nor by any of the elementary writers. On the contrary, the authority last quoted (Parsons) says (at p. 542 of the same treatise): "Doubtless, if by any agreement a partner bound his estate to the continuance of a partnership, it would be regarded by the law as so bound (unless the provisions were obviously foolish or inequitable) and all the rights of the representatives would be subject to this obligation." (See, also, Gow on Partnership, 242; Lindley on Partnership, 187, 884, 885.) That such was the purpose and effect of the agreement in this case cannot be doubted. It seems very clear that under that agreement it was the duty of the survivors to continue the business for the benefit of the estate of the deceased as well as for their own benefit, during the time fixed by the articles; and that by virtue of its prescribed contribution to the capital stock, the estate is entitled to its share of the profits according to the provisions of the contract.

No doubt a somewhat different reasoning applies to the case of the money in excess of the prescribed contribution of $20,000, which the deceased had in the business at the time of his death. This he was not required to contribute; it was at his election to withdraw it at any time, or to suffer it to remain, and this election, if it continued after his death, was to be exercised by his personal representative, who is also one of the partners in the firm. If he continues the money in the business, it is, in proportion to his interest in the profits, for his own benefit. But it is also, in a like proportion, for the benefit of the estate of the decedent; the money remains where it was left by him, invested as he had invested it, and drawing the same interest for which he had contracted and which he had received in his lifetime. It is the opinion of the court that there was in this no misappropriation of the fund, and that the measure of liability of the administrator was the same as that of the firm, viz., to account for the interest, at the rate speci-

fied in the contract, on the surplus capital of the decedent left by him in the business at the time of his death. Next, the theory that either of the surviving partners was entitled to share the profits of the business only in proportion to his actual contribution to the capital, when such contribution was deficient, ignores as well the contribution of his services as the apparent intention of the contract which, when it provides for payment of interest on excess of contribution, reasonably implies that interest shall be charged for a deficiency. And to this effect the contract has twice received practical construction at the hands of the partners themselves in the lifetime of James Laney, for, on both the accountings of 1884 and 1885, one or both of the present survivors were charged with interest on the deficiency in their contributions to the capital during the preceding year. For the purpose, therefore, of charging the administrator on this accounting there should have been added to the amount of profits actually realized from the business, in each year, interest on the deficiency, in his contribution to the capital, of each or either of the surviving partners.

*Fourth.* We think the method adopted by the referee for arriving at the amount of that deficiency was erroneous. As we have seen, he treats the drafts of each partner, from month to month throughout the year, as so much impairment of his capital, while he gives him no credit for his share of the profits of the year until the opening of the next year's account. It seems apparent that this method is faulty and the result fictitious. The profits of the business must be supposed to be realized, as the years business is done, currently, and, in the absence of any indication to the contrary, equally throughout the year. The fact that the amount of those profits is not definitely ascertained until the end of the year does not alter the case. The profits go into the business as fast as they are realized. So that if a partner's share of the current profits equals the amount of his current drafts there is no impairment of his capital. The method adopted by the partners themselves seems to have been substantially correct, they deducted from each man's investment at the beginning of the year his drafts during the year and added his share of the profits; and it was upon the difference between this result and the prescribed contribution of $20,000 that the interest to be charged or credited to him was computed. We are unable

to see that this method is subject to any just criticism, and we think it should be adopted for the purposes of the accounting in this case.

In respect to the disposition to be made of the $2,000 paid by the estate of the deceased member of the firm, as the equivalent of his services, we think the surrogate was right. The copartnership agreement does not declare what shall be done with this money after it is deducted from the share of profits belonging to the estate; but, on principle, it belongs to the copartnership, and not to the surviving partners. The services, of which it was the prescribed equivalent, were for the common benefit; the estate of the deceased suffers the same detriment by the loss of those services as does either of the surviving partners. If the deprivation of those services has made it necessary to employ another clerk, the estate of the deceased has paid an equal share of his compensation. There seems to be no doubt that the money paid as an equivalent for those services should be distributed equally between the three interests represented. We think the failure to provide by the terms of the agreement, what was to be done with the $2,000, was an omission which may properly be supplied by the court in construing the contract.

This seems to dispose of all the questions raised on this appeal. The decree of the surrogate should be modified as indicated in this opinion, and as so modified affirmed.

Proceedings remitted to the Surrogate's Court of Monroe county with directions to modify the decree accordingly, and the decree when so modified affirmed, with costs of this appeal to the appellant to be paid out of the estate.

All concurred.

Decree modified as indicated in the opinion, and as so modified affirmed, with costs of this appeal to the appellant to be paid out of the estate. The proceedings are hereby remitted to the Surrogate's Court of Monroe county to make the necessary computations and to enter the modified decree accordingly.