JAMES STEWART et al., Appellants, *v*. GEORGE H. ROBINSON et al., as Executors, etc., Respondents.

DAVID F. BUTCHER, Appellant, *v*. SAMUEL S. HEPWORTH et al., Respondents.

By the terms of a copartnership agreement between C. & H. the business was to be conducted with a capital, "not exceeding " $4,000, furnished by C.; the same to be repaid to him on dissolution of the firm before any division between the copartners of surplus earnings; these were to be divided equally between them.    The agreement provided that upon the death of either partner the business should "be continued by the survivor" for the term of five years "from the first day of February next succeeding such death, the estate of the deceased partner to have the same share and interest in the profits, and to bear the same share of the losses of the business as would have been received and borne by the deceased partner had he lived."    C. died leaving a will in which no reference was made to the partnership.  H., assuming to act under the agreement, continued the business in the same firm name.  In actions brought by creditors seeking to charge the estate in the hands of the executors and trustees, under the will of C., with debts contracted by H. in the business more than five years after the death of C., H. having become insolvent, it appeared that defendants knew of the continuance of the business, and that they loaned money to H., but that they had taken no part in the management.  *Held*, that the action was not maintainable; that defendants could not be deemed partners; that the agreement, if valid for any purpose, did not make new debts a charge upon any assets outside of those already pledged to the business; and, therefore, that the estate was not generally liable for the debts, but only to the extent of the property embarked in the business and authorized to be employed by the survivor.

*Willis* v. *Sharp* (113 N. Y. 586) distinguished.

Reported below, 48 Hun, 327.

(Argued April 15, 1889; decided October 8, 1889.)

THE appeal in the case first entitled is from a judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made May 14, 1888, which affirmed a judgment dismissing the complaint entered upon trial at Special Term.

This action was brought by plaintiffs, claiming to be creditors of the firm of S. S. Hepworth & Co., to charge the

estate, in the hands of defendants as executors and trustees under the will of Joseph Colwell, deceased, with the debts of said firm.

The facts are sufficiently set forth in the opinion.

*Ralph E. Prime* for appellants. The agreement in question between Mr. Hepworth and Mr. Colwell to continue the partnership business by the survivor, after death of either, was valid and lawful. (Collyer on Partnership, §§ 109, 214, 228, 229, 231; Story on Partnership, §§ 319a, 195, 196, 199; Lindley on Partnership, §§ 231, 1055; Parsons on Partnership, § 438; *Crawford* v. *Hamilton,* 3 Madd. 254; *Ex parte Garland,* 10 Ves. 110; *Balmain* v. *Shore,* 9 id. 506; *Burrill* v. *Mandeville Exrs.,* 2 How. [U. S.] 570; *Schoelfield* v. *Eichelberg,* 7 Pet. [U. S.] 594; *Smith* v. *Ayer,* 101 U. S. 329; *Richter* v. *Poppenhausen,* 57 Barb. 321; *Lane* v. *Arnold,* 11 Daly, 296; *In re Laney,* 2 N. Y. 443; 50 Hun, 15; 88 N. Y. State Rep. 463; *Wild* v. *Davenport,* 7 Atlantic Rep. 295; *Howard* v. *Clum,* 31 Minn. 186; *McNish* v. *H. O. Co.,* 57 Vt. 316; *Walker* v. *Wait,* 50 id. 668; *Butler* v. *A. T. Co.,* 46 Conn. 136; *Blodget* v. *American Bank,* 49 id. 9; *Robert* v. *Kelsey,* 38 Mich. 602; *Laughlin* v. *Lorenz,* 48 Penn. 275; *Gratz* v. *Bayard,* 11 S. & R. 46; *Goodbury* v. *Stevens,* 5 Gill, 1; *Williams* v. *Wilson,* 1 Bland. 424; *Davis* v. *Christian,* 15 Gratt. 32; *Alex* v. *Lewis,* 47 Tex. 487; *Skillman* v. *Lackman,* 23 Cal. 198; *Docharty* v. *Gray,* 30 id. 290; *Sttembre* v. *Putnam,* 60 id. 490; *Dwyer* v. *Burt,* 28 id. 569; *Taylor* v. *Castle,* 42 id. 367.)

*William B. Ellison* for executors, respondents. The death of one of the members of a partnership works its dissolution, and the future relations of the surviving parties to each other must be determined by some new agreement between them. (*Edgar* v. *Cook,* 4 Ala. 588; *Marlett* v. *Jackson,* 3 Allen, 290; *Humphreys* v. *McGraw,* 5 Ark. 65; *Griswold* v. *Waddington,* 15 Johns. 82; *Downs* v. *Collins,* 6 Hare, 418; *Vulliamy* v. *Noble,* 3 Merivales, 614; *Bank of Mobile* v. *Andrews,*

2 Sneed, 535; Parsons on Part. 438, 439; *Martine* v. *I. L. Ins. Co.*, 53 N. Y. 342; Story on Part. § 317; *Savage* v. *Putnam*, 33 Barb. 424; *Kennedy* v. *Porter*, 109 N. Y. 549, 550.) The agreement being an attempt on Mr. Colwell's part to provide for the care and control of his property after his death to the exclusion of such persons as would have been entitled to its care and control in case he had died intestate, was invalid as a contract. (*Ross* v. *Hardin*, 12 J. & S. 26, 31; 79 N. Y. 91.) Death dissolves the partnership, and the power of the survivor to bind the estate of the deceased then ceases. (*National Bank* v. *Morton*, 1 Hill, 572; *Van Keuren* v. *Parmelee*, 2 N. Y. 524; *Bloodgood* v. *Bruen*, 8 id. 362; *Bank of Newburgh* v. *Bigler*, 83 id. 57.) The executors, without any authority from the will, if they took upon themselves to trade with the assets, could not bind the estate of the said Colwell. (*Kurkman* v. *Booth*, 11 Beav. 273; *Harnett* v. *Wandell*, 60 N. Y. 347; *Finnern* v. *Lang*, 38 id. 465; *Ferrin* v. *Myrick*, 41 N. Y. 315; *Austin* v. *Munro*, 47 id. 360; *Carey* v. *Gregory*, 6 J. & S. 127; *Hertzfield* v. *Parkes*, 19 Week. Dig. 238; *Schmittler* v. *Simon*, 101 N. Y. 554; *Richter* v. *Poppenhausen*, 39 How. Pr. 82.) Whatever may be the position of property already in the business, there is no authority upon which the general assets of the estate can be held liable. (*Burwell* v. *Cawood*, 2 How. [U. S.] 557; *Ex parte Garland*, 10 Ves. 110; *Hanky* v. *Hammock*, 3 Madd. 148; *Davis* v. *Christian*, 15 Gratt. 11; *Ex parte Richardson*, 3 Madd. Ch. 138; *Thompson* v. *Andrews*, 1 M. & K. 116; *Brasfield* v. *French*, 59 Miss. 632; *Pitkin* v. *Pitkin*, 7 Conn. 307; *Hammergen* v. *Schurmeirer*, 3 Fed. Rep. 69; *Stanwood* v. *Owen*, 8 Mass. 195; *Edgar* v. *Cook*, 4 Ala. 588; *Kirkam* v. *Booth*, 11 Beav. 273, 280; *Cutbush* v. *Cutbush*, 1 id. 184; *McNeillie* v. *Acton*, 4 De Gex, M. & G. 744; *Smith* v. *Ayer*, 101 U. S. 320; *Jones* v. *Walker*, 103 id. 444.)

DANFORTH, J. The defendants are brought before the court as trustees and executors of the estate of Joseph Colwell,

deceased.    It appears that Colwell, in his lifetime, and one Samuel S. Hepworth carried on business as copartners, under the name of S. S. Hepworth & Co., for the manufacture and sale of centrifugal machines and some other machinery, under articles of agreement, one of which was entered into February 22, 1877, and provided for the continuance of the partnership for five years from January 1, 1877, and for a capital in cash not exceeding $4,000, to be furnished by Colwell, and be represented " by the good will of the business, its shops, fixtures, tools, machinery and materials for manufacture, all of which should belong to and be his individual property," profits to be shared equally, and all losses of the business, including loss of capital, borne equally.    Hepworth was to devote his time and personal attention to the business, but Colwell was not required to do so further than might be convenient for himself.

The seventh clause of the articles declared that : " Should either partner die during the term of said copartnership the firm shall not be deemed dissolved thereupon, but the wife and children of the decedent shall immediately succeed to his interest, which, thenceforward, shall be prosecuted for the remainder of the term for the benefit of them and the surviving partner. Either partner may designate by will what interest his wife and children, as between themselves, shall have in his said copartnership interest in the event of his death as aforesaid."

Before the expiration of the stipulated time, and on the 18th of October, 1881, a further agreement was made that the copartnership should continue until dissolved by mutual consent or terminated by six months notice in writing by one party to the other, and that " in the event of the death of either, the business shall be continued by the survivor until the expiration of five years from the first day of February next, succeeding such death, the estate of the deceased partner to have the same share and interests in the profits, and to bear the same share of the losses of the business as would have been received and borne by the deceased partner had he lived,

provided, however, that if the survivor shall think it necessary to employ an additional clerk in consequence of the death of the deceased partner, in such case the expense shall be charged to and shall be borne by the share in the profits of the deceased partner."

The firm business was thereafter continued under these instruments until the 1st day of June, 1882, when Colwell died, leaving children and a will. He appointed the above-named defendants executors and trustees, and gave them, in trust for his children, the greater part of his estate, and directed a distribution of the whole, making no reference to the business of the firm of S. S. Hepworth & Co., or to it in any way, or to the agreement above set out, and revoking all other wills theretofore made by him. It also appeared that from the death of Colwell to September, 1887, the business of S. S. Hepworth & Co., was continued and carried on by Samuel S. Hepworth, he assuming to do so under the agreements of February 23, 1877, and October 13, 1881. In the course of that business in September or October, 1887, or five years after Colwell's death, he contracted debts with the plaintiffs and with other persons or firms, in the name of S. S. Hepworth & Co., for some of which he gave promissory notes in that name, and others of which rest in account.

On the 4th of October, 1887, Hepworth, individually and as surviving partner, was insolvent to the extent of about $500,000, and on that day made an assignment in both capacities for the benefit of his creditors. The individual debts of Colwell have been paid, and property remains in the hands of his executors. The plaintiffs, either as original creditors or by assignment, are the owners of the debts contracted by Hepworth and set out in the complaint, amounting in the aggregate to about $15,000, and they seek to recover the amount from the individual estate of Colwell, and in the meantime ask for the appointment of a receiver of his property, assets and estate, and an account thereof from the defendants as his representatives. Various defenses were interposed by them, but, so far as material upon this appeal, their effect

depends upon the single question whether the general estate of Colwell was, by virtue of the above agreements, rendered liable for debts contracted by Hepworth in the firm name, after the death of Colwell. The trial court and the General Term have held against the plaintiffs, and the defendants had judgment accordingly.

It is a general rule that a contract of partnership is dissolved by the death of one of the parties, whether entered into for a fixed time or not, and that after his death the former partner cannot bind the estate of the decedent by new contracts; and although the partnership be expressly extended to executors, they could not be compelled to carry it on, and would be entitled to a dissolution and an account of the assets, subject to the liabilities of the firm incurred up to the time of dissolution. These are familiar and well-settled principles. Here the representatives of the deceased partner were not to be partners with the survivor, nor were they to have anything to do with the conduct of the business or its management. On the contrary, the business is "to be continued by the survivor." We have only to inquire, therefore, whether the partnership agreements take the case out of the general rule.

The frame of the last articles shows that the parties contemplated and bargained for a continuance of the business for the term of five years from the first of February next preceding the death of either, but the residue of the clause containing this stipulation depends, to some extent, for its interpretation upon the preceding or original article. The second agreement refers to the first as containing the terms and conditions on which the business is to go on; and looking there we find that the capital, however represented by money, tools, machinery or material, was not to exceed $4,000, and was to be provided by Colwell and to remain his individual property. That contribution made him an equal partner, and upon dissolution of the firm was to be repaid to him, with interest, before any division of surplus earnings should be made. Death of a partner, however, was not as, of course, to work a dissolution, but the wife and children of the decedent were immediately

to succeed to his interest in the business, which thenceforward was to be prosecuted for their benefit and that of the surviving partner. We do not need to ascertain whether this clause could have any effect without the assent of the parties named, for it never came into operation, being suspended by that of the agreement of October thirteenth, which provides for the ·continuance of the business "by the survivor" and the distribution of profits or losses "to the estate of the deceased partner, as would have been received and borne by him had he lived." It is to be seen, therefore, that the capital invested was to remain the same; it was not to exceed $4,000; it belonged to Colwell, but was to continue in the business notwithstanding his death, and could not be withdrawn until the ·expiration of five years from that event. So much the surviving partner might insist upon. I do not see that he could rightfully exact more, and if he could not, how could third persons? There is, in fact, no partnership, for there are no partners. There is a surviving partner. Under the first article it might be said that if the wife and children assented they would have become partners. The executors cannot be deemed partners, for that capacity has not been put upon them, nor have they assumed it, directly or indirectly, by taking any part of the management of the business. They knew of its continuance and loaned Hepworth money upon security. Nothing more. A new partnership was not formed, nor can one be implied. But it is said the "estate" of the deceased partner is to share in profits or bear a portion of the losses — of what? Not a partnership, but a business conducted by a surviving partner. An estate cannot be a partner. I think the provision in the agreement means nothing more than that the capital actually invested in the business before or at the death of the partner shall continue to be so subject or liable.

The general rule already adverted to does, upon the death of a partner, terminate the power of his associate or copartner to contract new debts on the credit of the firm. Assuming with the appellant that this general result of law may be varied by an express agreement, it will then depend upon the

particular terms of that agreement to what extent the estate
of a deceased partner may be bound by the surviving member
of the firm, "whether his estate shall be generally liable for
all the debts, or only to the extent of the property embraced
and left in the partnership to be employed by the survivors."
(Story on Partnership, 201a.)    But it is said in *Burwell* v.
*Mandeville's Executors* (2 How. [U. S.] 560), "Nothing,
however, but the clearest and most unambiguous language,
showing in the most positive manner an intention on the part
of the testator to render his general assets liable for debts con-
tracted after his death, will justify a court in extending the
liability of his estate beyond the actual fund employed therein
at the time of his death."    In that case (*Burwell* v. *Mande-
ville Exrs.*), it appeared that the testator died while in part-
nership with one Cawood, leaving a will by which he distributed
his estate, and a codicil made during the existence of the firm,
by which, in substance, he directed that the business of the
copartnership existing between Cawood and himself should be
carried on by Cawood and his (the testator's) interest therein
continued until the expiration of the term limited by the
copartnership articles, and the profit and loss distributed as
those articles provided.    Cawood carried on the business, and,
before the time limited for the partnership expired, failed,
and an action was brought against him and the executors of
the deceased partner, by a creditor of the firm upon debts
contracted with Cawood on account of and in the name of the
firm after the death of the testator.    The executor denied
that the assets were liable.    The answer was demurred to, but
the defense was held good and so the action failed, the court
holding that the general assets of the testator were not bound
for debts contracted after his death in behalf of the partner-
ship, and that the rights of any creditor in respect to such
death were exclusively restricted to the funds actually
embarked by the testator in the business, and to the personal
responsibility of the surviving partner, the court saying, "the
interest" of the partner dying "in the firm was his share of
the capital stock and profits, after the payment of all debts

and liabilities of the firm.   It is this interest, and not any new
capital, which he authorizes to be embarked in the firm.   He
does not propose to add anything to his existing interest, but
simply to continue it as it then was.   How, then (the learned
judge continues), can  the court say that he meant to embark
all his personal assets in the hands of his executors as a pledge
for the future debts, or future responsibilities, or future
capital of the firm.   That would be to enlarge the meaning
of the words beyond their ordinary and reasonable significa-
tion," and he says, " no court of justice ought, upon principle,
favor, much less adopt it."   And adds, " there is no authority
to support it."   On the other hand, several cases are cited by
the learned court as reasoned out and sustained upon the broad
and general principle that only the partnership fund was
involved, and the new creditor confined, in pursuing his remedy,
to so much of the estate of the decedent as was embarked in
the trade, and to the personal responsibility of the party who
continued the business, whether as trustee, executor, or
partner, unless, indeed, the testator had otherwise plainly and
expressly bound his general assets."

The same doctrine was established in the courts of Con-
necticut at an earlier time (1829) in *Pitkin's Case* (7 Conn.
307); also cited with approval by Judge STORY in *Burwell v.
Mandeville's Executors* (*supra*).

The general subject of the construction of language giving
power or authority for the continuance of a trade, after the
death of one member of a firm, has also been under considera-
tion in this court and its conclusion expressed in the decision
of *Willis* v. *Sharp* (113 N. Y. 586).   Among other cases
referred to was *Burwell* v. *Mandeville's Executors* (*supra*),
and the general proposition there laid down restated.   It was
assumed that the courts, with reasonable unanimity, sustained
as valid a direction in the will of a testator that his trade
should be continued whether his business was that of a sole
trader, or of a firm of which he was a member, but it was
held that a mere power to carry on the testator's trade, or to
continue his business in a firm of which he was a partner,

without anything more, will be construed as an authority simply to carry on the trade or business with the fund already invested in it at the time of the testator's death, and to subject that fund only to the hazards of the trade and not the general assets of the estate; and, also, that the property already embarked in the business is the trade fund, unless it appears from the will that the executor was authorized to use the general assets in the business.

These views were sustained upon authority. They require us to search for the intention of the deceased partner in the language used by him in giving his directions. In the case then before us (*Willis* v. *Sharp, supra*) the testatrix, at the time of her death, was engaged in "the merchant tailoring business," and by will directed that after her death "some legitimate business should be carried on by her executors for the benefit of her son Harry, and that her husband, the defendant, should be retained as manager thereof at a salary of $1,500 a year;" and this was followed by a provision empowering her executors "to sell or make such other disposition of my real and personal estate as the safe conduct of such business shall seem to require," and in favor of a creditor who became such in the course of the business so carried on, we held that this provision indicated an intention to subject her general assets to the debts of that business, and that her general estate was bound by the debt contracted; but we also said: "If, in this case, there was in the will simply an authority or direction to the executors to carry on a trade, and in pursuance of the power the executor continued the existing business, we think, under the authorities cited, the plaintiffs could have no remedy except to pursue the assets embarked in the trade at the death of the testatrix."

In the case now before us the directions or authority are such only, as we said in the former case, would be insufficient to enable a creditor to reach the general assets of an estate. They are almost literally, in every sense, substantially the same as those actually presented by *Burwell* v. *Mandeville*

(*supra*), and, in view of the decisions thus referred to, it would be useless to go on in this discussion as a new one or do more than call attention to the terms of the contract on which appellants must succeed or fail in their contention against the decision of the court below :

*First.* The "capital" is fixed at $4,000, the sole property of Colwell.

*Second.* It is with that capital that "the business of the copartnership" is to be conducted.

*Third.* The profits of the business are to be divided between the parties at convenient periods.

*Fourth.* At the dissolution of the partnership, and the liquidation of its business, the cash capital is to be repaid before any division of surplus earnings.

These terms and conditions are, by reference, incorporated into the new agreement on which the appellants rely. The second agreement repeats the same general language. In the event of death "the business" shall be continued, *i. e.*, "the business already described as employing a certain capital," not an additional capital ; and the profits and loss of the same "business" are to be shared in the same manner as if the deceased partner were alive, with only one addition, viz., the survivor might, if he thought necessary, in consequence of his partner's death, employ an additional clerk, the expense of whose employment should be borne by "the share of the profits of the deceased partner." Here are no words from which can be implied an intention to bring into the concern other capital, or make new debts a charge upon any assets outside of those already pledged to the business of the firm. It is nothing more than an authority to the surviving partner to continue an existing business, and, therefore, within the authorities cited, and upon reason and common sense, the plaintiffs cannot have the relief they seek in this action.

The respondents assail the validity of the agreement for any purpose. I do not think it necessary to determine the question so raised. It is enough to dispose of the present case that we find no language on the part of the deceased

partner which indicates any intention to put in hazard his general estate, or which, by fair construction, furnishes any ground for the present action.

It follows that the judgment appealed from should be affirmed, with costs.

All concur, except EARL, J., not voting.

Judgment affirmed.

THE appeal in the case second entitled is from a judgment of the General Term of the Supreme Court in the first judicial department, entered upon an order made December 12, 1888, which affirmed a judgment dismissing the complaint entered upon a trial at Special Term.

This action was brought by plaintiff as receiver of the firm of S. S. Hepworth & Co., to charge the executors and trustees under the will of Joseph Colwell, deceased, as copartners with S. S. Hepworth from the time of the death of said Colwell to October 4, 1887.

The facts are sufficiently stated in the opinion.

*William C. Wallace* for the appellant. The articles of copartnership established valid contractual relations between the partners, which continued after the decease of Mr. Colwell, by which his whole estate was made liable for any and all debts incurred within the designated period. (*In re Diez*, 50 N. Y. 93; *Blodgett* v. *Am. Nat. Bk.*, 49 Conn. 9; *Hoyt* v. *Sprague*, 103 U. S. 613; *Warner* v. *Cunningham*, 2 Ves. 33; 3 Dowl. Parl. Cas. 76; *Balmain* v. *Shore*, 9 id. 500; *In re Northern Coal Mining Co.*, 16 Jur. 299; *Beveridge* v. *Beveridge*, 2 Pat. Scotch App. 1976; *Powell* v. *Hopson*, 13 La. Ann. 626; *Duffield* v. *Brainerd*, 45 Conn. 424; *Butler* v. *Am. Toy Co.*, 46 id. 145; Toller on Exrs. 166; Story on Part. § 319a.) This contractual relation subjected the entire estate of the testator to the continued business of the partnership. (*Kittowitz* v. *Alexander*, 34 Tex. 689.) Technically, under the law of partnership, the firm of S. S. Hepworth & Co., existing at the time of the decease of Mr. Colwell was dissolved, and a new firm was formed, in

which the executors of Mr. Colwell, in their representative capacity, became partners. (*Burwell* v. *Mandeville*, 2 How. 561; *Blodgett* v. *Am. Nat. Bk.*, 49 Conn. 9; *Ex parte Richardson*, 2 Madd. Ch. 130; *Phillips* v. *Blatchford*, 137 Mass. 510; *Wills* v. *Murray*, 4 Exch. 843, 868; *Tyler* v. *Tyler*, 2 Railway Cas. 813.)

*William H. Arnoux* for appellant. A partner can, by an agreement sufficient and valid on its face, bind his property after his decease. (*Blodgett* v. *A. Nat. Bk.*, 49 Conn. 9; *Todd* v. *Weber*, 95 N. Y. 181.) A partnership may be made to survive a partner's death. The executor or administrator would contribute the deceased partner's estate and replace him in the firm. (Parsons' Principles of Partnership, § 71; *Laughlin* v. *Lorenz*, 12 Wright [Pa.] 275.)

*William B. Ellison* for Skellen et al., executors, etc., respondents. The provisions in the original articles of copartnership, that upon the death of a member the copartnership should not be dissolved; that the wife and children of the deceased partner should succeed to his interest and the business should be by them prosecuted for the remainder of the term, are, in fact, only bargains for the creation of a new partnership when the old one ceases to exist upon the death of a partner. (Parsons on Copartnership, 439; *Martine* v. *Inter. Life Ins. Co.*, 53 N. Y. 342; *Savage* v. *Putnam*, 33 Barb. 424; *Edgar* v. *Cook*, 4 Ala. 588; *Briswold* v. *Waddington*, 15 Johns. 82.) The clause of the supplemental agreement upon which this action is founded was, in effect, an attempt to appoint, by an instrument *inter vivos*, a person to take the control and management of a certain portion of the deceased partner's property after his death, and which was not to commence until after that death; such a provision was and is invalid. (*Ross* v. *Hardin*, 12 J. & S. 26; 79 N. Y. 91.) The clause in question was testamentary in its nature. (4 Kent's Com. 502; 2 Burrill's Law. Dic. 622; 6 Wait's Actions and Defenses, 377.) The fact that the instrument is in the form of a contract is immaterial. (Beach on Wills, §§ 18, 51;

*In re Diez,* 50 N. Y. 88; *Reed* v. *Hazleton,* 24 Rep. 678; *Cover* v. *Stem,* 67 Md. 449; *Sperber* v. *Balster,* 66 Ga. 317; *Turner* v. *Scott,* 51 Penn. St. 126; *University* v. *Barrett,* 22 Iowa, 60.) The presence of clauses which are, in their nature, contracts will not prevent the other provisions, if in their nature testamentary, from being held to be a will or testamentary disposition. (*Reed* v. *Hazleton,* 24 Rep. 679; *Kinnedrew* v. *Kinnedrew,* 35 Ala. 628.) The clause in the instrument in question was revocable. (Beach on Wills [1888], § 51.) The effect of the clause in question, if valid, would be to suspend unduly the absolute ownership of the personalty. (R. S. [7th ed.] 2250; *Schettler* v. *Smith,* 41 N. Y. 334; Lewis on Perpetuities, 170; *Hawley* v. *James,* 16 Wend. 62; *Rice* v. *Barrett,* 102 N. Y. 161; *Rose* v. *Rose,* 4 Abb. Ct. App. Dec. 108; *In re Russell,* 8 N. Y. S. R. 754; *Smith* v. *Edward,* 88 N. Y. 92; *Henderson* v. *Henderson,* 12 N. Y. S. R. 577; *Converse* v. *Kellogg,* 7 Barb. 597.) If the clause in question was invalid, then the surviving partner had no power to bind the estate of the deceased partner. (*Nat. Bk.* v. *Morton,* 1 Hill, 572; *Van Keuren* v. *Parmelee,* 2 N. Y. 524; *Bloodgood* v. *Bruen,* 8 id. 262; *Bank of Newburg* v. *Bigler,* 83 id. 57.) The executors, without authority from the will, could not bind the estate of Joseph Colwell. (*Kurkman* v. *Booth,* 11 Beav. 273; *Harnett* v. *Wandell,* 60 N. Y. 347; *Finnern* v. *Lang,* 38 Hun, 465; *Ferrin* v. *Myrick,* 41 N. Y. 315; *Austin* v. *Munro,* 47 id. 360; *Carey* v. *Gregory,* 6 J. & S. 127; *Schmittler* v. *Simon,* 101 N. Y. 554; *Richter* v. *Poppenhausen,* 39 How. Pr. 82.)

*Thomas Darlington* and *Joseph H. Choate* for executors of Delamater, respondents. There being no evidence that the executors ever took any part in the business they never became partners therein. (*Wild* v. *Davenport,* 48 N. J. 129; 5 Cent. Rep. 74; *Richter* v. *Poppenhausen,* 39 How. 83; 42 N. Y. 373.)

*Ralph E. Prime* for S. F. Quick, assignee, and S. S. Hepworth, respondents. Hepworth, in his capacity as survivor of the copartnership, composed of himself and the deceased

Colwell, was authorized by law to make a general assignment for benefit of creditors of the property held by him as survivor. (*Williams* v. *Whedon*, 109 N. Y. 333; *Beste* v. *Burger*, 110 id. 644.)

*Samuel Jones* for G. H. Robinson, respondent.

DANFORTH, J. This case differs essentially from the case of *Stewart* v. *These Defendants* (*supra*, p. 328), and from that of *Delamater* v. *The Same* (*post*, p.    ), and especially because in the former there was no claim that the executors of Colwell became partners with Hepworth, and in the other there was an explicit declaration that no such relation existed, whereas in the present case it is made a distinct ground of right to a recovery that the business was conducted by " Samuel S. Hepworth, and the said executors as copartners, under the firm name of S. S. Hepworth & Co., from the time of the death of Colwell down to October 4, 1887. Indeed, the plaintiff's case rests upon the truth of this allegation. His claim is " that a valid partnership was formed which continued until the failure of S. S. Hepworth & Co.; that the executors were partners in that company after they qualified.; that a certain mortgage given by Hepworth, as surviving partner, to the executors was invalid, because the estate of Colwell was liable for the debts of the firm, and for other reasons; that certain instruments, assignments, mortgages, etc., given by Hepworth are invalid; that, therefore, the plaintiff is entitled to a decree establishing the lien of his judgment as superior to these incumbrances."

The plaintiff sues as receiver, appointed upon an application made in supplementary proceedings by certain creditors of S. S. Hepworth & Co., who had recovered judgment against Hepworth and the executors as copartners, in actions nominally against them all, but in which the summons was served upon Hepworth alone. The defendants answered, and upon trial of the issues at Special Term, the complaint was dismissed, and upon appeal by the plaintiff to the General Term the judgment of the Special Term was affirmed.

The appellant's argument rests mainly upon the clause in the supplemental contract between Colwell and Hepworth, which is set out fully in the *Stewart Case* (*supra*), and especially upon that part of it which provides " that the estate of the deceased should share in the profits and losses as he would have done." In view of our recent decision (*ante*, p. 328) in the case of *Stewart* v. *Robinson*, we think it necessary to consider only, and that briefly, the second point made by the learned counsel for the appellant, viz. : " That technically, under the law of partnership, the firm of S. S. Hepworth & Co., existing at the time of the decease of Mr. Colwell, was dissolved and a new firm formed, in which the executors of Colwell, in their representative capacity, became partners."

It is undoubtedly the fact that the death of Colwell dissolved the firm of S. S. Hepworth & Co. Hepworth from that moment, as surviving partner, became, in the eye of the law, the sole and absolute owner of its assets. He, and not Colwell's representatives, was the one to wind up the concern, to sue and to be sued, to pay the debts of the firm and do all other acts in any way relating to it. (*Nehrboss* v. *Bliss*, 88 N. Y. 600.) He was bound to account for the proceeds, and the estate of the deceased partner was also liable on all antecedent engagements. The dissolution had respect to the future, however, and the estate was not liable for debts thereafter contracted. Indeed, this action does not proceed upon the theory that it was. It is put in motion upon the ground that a new firm was formed, of which the executors were members. The testator did not so ordain either by will or contract. His agreement for the continuance of the business and a distribution of profits to his estate did not amount to that (*Holme* v. *Hammond*, L. R., 7 Ct. of Ex. 218), nor did the executors agree to such arrangement. They did not act as partners. They dealt with the surviving partner as others might have done. They loaned him money; they took security for its repayment from him, he acting, as he had a right to do, as surviving partner. The estate of Colwell had a pecuniary interest in the winding up of the concern, and so

that period did not exceed the limitation of five years from their testator's death, they were not required to interfere. They might do what they could to promote its successful termination. In fact, they did nothing more ; they interfered neither with the business nor its management.

There is nothing to show that any relation of principal and agent existed between them, or that there was any contract of copartnership, or that they so conducted that, even as to third parties, they constituted themselves partners.

We find nothing within the record to give any color to the plaintiff's assertion that "the executors of Colwell, in their representative capacity, became partners" with Hepworth.

*First.* The agreement between Hepworth and Colwell provides only that upon the death of either "the business shall be continued by the survivor." It excludes the idea that the representatives of the partner dying shall come in, or that a new firm shall be formed, or that the place of the decedent shall, in any sense, be filled. His death, the agreement suggests, may throw a greater burden on the survivor, and in that case "the survivor, if he thinks it necessary, may employ an additional clerk." Such is the contract. Greater clerical and subordinate force, a new employe, but neither a new principal nor associate. There is nothing in the agreement, therefore, which continues the partnership or calls for a new one.

Nor is there any force in the observation that the estate is to share in the profits and losses of the continued business. The agreement does not involve the general assets of the decedent, but is confined to that specific portion which, by the partnership articles, is devoted to it. (*Stewart* v. *Robinson, supra.*) No additional fund is appropriated from the effects of the deceased partner. The fund reserved from his property by contribution to the firm in its original formation remains. It is neither enlarged nor diminished. The plaintiffs, therefore, derive no aid from the agreement. Their action is not against the survivor, nor do they pursue any fund within his control.

*Second.* They proceed against parties whom they describe as

constituting "the said second firm" of S. S. Hepworth & Co., composed, as they allege, of "S. S. Hepworth and the executors of Colwell," charging them with continuing the business, and asserting that the debt sought to be recovered was by them contracted. As these allegations have no support in the agreement to which Colwell was a party, neither are they sustained by any evidence of an express agreement or of conduct on the part of the defendants from which such an agreement may be implied. To make out their case two witnesses were called by the plaintiffs, Hepworth and Robinson, both defendants. No other witness to any point is produced, and both of these, upon examination by plaintiff's counsel, deny every fact to which their attention is called and the existence of which, if proven, would, as assumed by the plaintiffs, have a tendency to make out the case stated in the complaint. The failure of proof was so complete that the trial judge would have erred had he not dismissed the case as one wholly without support. I have examined the authorities cited by the learned counsel for the appellant, and find no one which supports his contention. In every case where the plaintiff has not established a contract of partnership the action has failed and the decision has been that the defendant was not liable. It is not to be denied that a man may, by covenant, bind his representatives and charge his estate. In this case he has not done so. Nor have his representatives made the contract of partnership upon which the plaintiffs rely.

Neither legal nor equitable considerations require that the judgment appealed from should be disturbed. It should, therefore, be affirmed, with costs.

All concur, except Earl, J., not voting.

Judgment affirmed.