CHARLES E. MERRILL and ALBERT F. JAECKEL, as Trustees, etc., CHARLES E. MERRILL and BEVERLY W. SMITH, as Trustees, etc., and BEVERLY W. SMITH and Others, as Executors and Trustees under the Last Will and Testament of EDMUND C. LYNCH, Deceased, Plaintiffs, *v.* VERNON LYNCH and Others, Defendants.

Supreme Court, Special Term, New York County, June 20, 1939.

*Chadbourne, Hunt, Jaeckel & Brown,* for the plaintiff trustees.

*Dwight, Harris, Koegel & Caskey,* for the plaintiff executors.

*John Godfrey Saxe,* guardian *ad litem* for infant children of Edmund C. Lynch, deceased.

*John N. Regan,* guardian *ad litem* for Caroline McNabb and others, infant defendants.

*Carl K. Mengel,* guardian *ad litem* for Margery McNabb and others, infant defendants.

CHURCH, J. In 1925 and 1926 Jennie V. and Richard H. Lynch, legally domiciled in Maryland but having a summer residence at Westhampton Beach, N. Y., each set up three irrevocable trusts of personal property to pay the income to their son Edmund, a resident of New York, for life, with a general power in Edmund to appoint the remainder by will and, in default of appointment, as to two of the trusts, to the lawful issue of Edmund living at his death *per stirpes,* and, as to the other four, to the children of Edmund living at his death.

Each of the six trusts was drawn in New York by New York attorneys. Each had two trustees. Of four of the trusts both trustees were in New York; of the other two one trustee was in New York and the other in Maryland. One trust was executed by the settlor and by both trustees in New York; two trusts were executed by the settlor and by the Maryland trustee in Maryland and thereafter by the New York trustee in New York; three trusts were executed by the settlor in Maryland and thereafter by both trustees in New York. The dates of the acknowledgments indicate that final delivery of each of the trust instruments was made in New York.

Prior to the establishment of the trusts the securities constituting the trust property had always been physically located in New York. After the trusts were established the securities remained there.

Four of the trusts provided that their " provisions shall be governed by the laws of the State of New York with respect to any question, whether of validity or of interpretation, arising hereunder." The other two trusts are silent on this question, but one of them is the trust which was executed by both the settlor and the trustees

in New York and the other is one where both trustees were in New York.

In August, 1930, the life tenant executed a will and codicil wherein he purported to exercise his powers of appointment by appointing to his issue, *per stirpes*, during the life of his wife, and on her death outright to his then living issue, *per stirpes*, with contingent remainders to his wife, his mother, his sister and numerous uncles, aunts, cousins and issue of cousins in default of or on failure of his own issue.

On August 12, 1935, the life tenant, desiring to extinguish the powers of appointment, executed in the presence of his mother in New York, his father being then deceased, six separate instruments — one for each trust — wherein for a stated consideration of one dollar, which was actually paid by her, he purported to renounce and relinquish the powers of appointment, reciting that he intended thereby to divest himself of all rights and privileges granted to him by each such power " as if such power of appointment had not been granted." The releases were then delivered to the trustees. He did not alter his will or codicil, however, because if he had done so his widow would have acquired, under section 18 of the Decedent Estate Law, a right to elect to take against the will. (See *Matter of Greenberg*, 261 N. Y. 474 [1933].)

On May 12, 1938, the life tenant died, and his 1930 will and codicil have been admitted to probate in New York county. He was survived by his wife, three children, aged seven, ten and twelve, his mother, his sister and most of the uncles, aunts and cousins mentioned as contingent remaindermen.

The primary question for determination is whether the powers of appointment have been exercised. This is dependent solely upon the question whether the 1935 renunciations were valid and effective.

The plaintiffs consist of two groups: (1) the trustees under six trusts, which were created *inter vivos* for the benefit of Edmund C. Lynch during his life, with remainders to such persons as he should by will appoint, and with remainders over in default of such appointment; (2) the executors under the will of Edmund C. Lynch, which purported to exercise these powers of appointment if Edmund C. Lynch still held them at his death.

The defendants are the persons (all relatives of Edmund C. Lynch) who will be (1) beneficially interested in the trust estates under the default provisions of the trusts in case the renunciations are held valid, or (2) beneficially interested under the appointive provisions of the will in case the renunciations are held invalid.

The six *inter vivos* trusts for the benefit of Edmund C. Lynch for life were created in 1925 and 1926, three by his mother, Jennie, and three by his father, Richard. Each of the trusts contained the following provision (except that the words in parenthesis occur in only two of the trusts): " On the decease of said Edmund C. Lynch, said Trustees shall transfer, deliver and pay over said trust fund as it shall then exist (with all accumulations of income) to such person or persons, institutions or corporations, and in such shares and proportions as the said Edmund C. Lynch shall by last will and testament or by any codicil thereto direct and appoint; and in default of such direction or appointment, or insofar as such direction or appointment may not extend or be effectual, said trustees shall dispose of the said trust fund as follows:" The provisions in the trust indenture disposing of the trust funds in case Edmund C. Lynch did not exercise his powers of appointment are hereinafter set forth.

The language used in the will of August 20, 1930, of Edmund C. Lynch is significant:

" Article VI. I give, bequeath and devise any and all property, real or personal, over which I may have the power of appointment at the time of my decease, under the provisions of a trust agreement dated August 8, 1925." (Here are listed the six *inter vivos* trusts above mentioned.)

The will and codicil above referred to were admitted to probate as his last will by decrees of the Surrogate's Court of the county of New York, the county of his domicile, entered on June 9, 1938, and July 18, 1938.

On August 12, 1935, five years after the execution of Edmund C. Lynch's will and approximately three years before his death, Edmund C. Lynch, in respect of each of the six trusts, executed an instrument whereby he renounced and relinquished the power of appointment granted him under such trust for the purpose of divesting himself completely of all rights under the power. The wording of each of these six renunciations is as follows:

" Know all men by these presents, That I, Edmund C. Lynch, in consideration of One Dollar ($1) to me in hand paid by my mother, Jennie V. Lynch, receipt whereof is hereby acknowledged, do hereby renounce and relinquish the power of appointment by my last will and testament or any codicil thereto granted to me under paragraph 3 of a certain Indenture of Trust [here is stated a description of each trust, including the name of the grantor, the trustees and the date] intending by this renunciation to divest myself completely of all rights and privileges granted to me by such power of appointment as if such power of appointment had not been granted.

" In witness whereof, I have hereunto set my hand and seal this 12th day of August, 1935, and have delivered originals of this instrument to [naming the trustees of each trust] as Trustees under said Trust.

" EDMUND C. LYNCH (L. s.) "

Each of these renunciations was delivered to the trustees of the trust as to which the power of appointment was relinquished. Edmund C. Lynch received no consideration for these renunciations other than the nominal consideration of one dollar recited as paid to him by his mother, Jennie. The execution and delivery of these renunciations were consented to and approved by Edmund C. Lynch's mother, Jennie, who was the creator of three of the trusts. Edmund C. Lynch's father, Richard, the creator of the other three trusts, had previously died intestate on November 11, 1927. At the date of the execution of the renunciations the only persons interested in the father's estate were Edmund C. Lynch and his mother, Jennie.

One of the trusts (the indenture dated April 3, 1926, from Jennie Lynch to Charles E. Merrill and Beverly W. Smith, trustees) contains the following directions to the trustees as to the disposition of the trust fund upon Edmund C. Lynch's death in case his power of appointment is not exercised:

" (a) They shall divide the same into as many equal shares as there shall be lawful children of said Edmund C. Lynch living at the time of his decease; they shall apply the net rents, profits and income of one of such equal shares to the maintenance and education of each such living child, or in their discretion shall permit such income to accumulate in whole or in part, until such child shall reach the age of 21 years; they shall pay over such accumulation, if any, to such child when it shall have reached the age of 21 years, and shall pay the net rents, profits and income of such equal share to such child between the ages of 21 and 30 years; they shall transfer and deliver one such equal share to such child when it shall have reached the age of 30 years."

The provisions of the other five trusts, though not in identical language, are similar. The ages at which Edmund C. Lynch's children are to receive the principal vary in the different trusts, and four of the trusts provide for earlier payments on certain contingencies.

Edmund C. Lynch had only three children, a daughter born in 1925, a son born in 1928, and a daughter born in 1930, all of whom survived him and are now living. Edmund C. Lynch's will, in purporting to exercise the powers of appointment, provides in substance as follows:

" (a) The Executors and Trustees under the will shall receive the property in trust and pay the income to the issue of Edmund C. Lynch, *per stirpes*, so long as Signa Fornaris Lynch [the widow] shall live;

" (b) Upon the death of Signa Fornaris Lynch, the principal is to be paid to the issue of Edmund C. Lynch then living, *per stirpes;*

" (c) In the event that all issue of Edmund C. Lynch shall predecease Signa Fornaris Lynch, the principal is to be paid to Signa Fornaris Lynch [the widow], Jennie V. Lynch [the mother] and Frances M. Lynch [the sister], in equal shares, if all of them are living;

" (d) If only two of them are living, each is to receive one-third of the principal outright; if only Signa Fornaris Lynch is living, she is to receive one-half of the principal;

" (e) Any part of the principal not disposed of under the foregoing provision [which may be one-third or one-half of the principal] is to be paid to certain named uncles, aunts and cousins of Edmund C. Lynch, who are living at the time of the distribution of the principal, the then living issue of any deceased cousin to take the share the cousin would have taken if living, *per stirpes*."

Edmund C. Lynch left him surviving, in addition to the three minor children above mentioned, his mother, Jennie V. Lynch, his widow, Signa Fornaris Lynch, and his sister, Frances M. Lynch, and also numerous of his uncles, aunts and cousins named in the will, some of whom have issue now living.

The disposition prescribed in the trust indentures in case the powers are not exercised and the disposition made by the appointive provisions in the will may be compared as follows:

(1) The principal and direct beneficiaries in each case are the three minor children of Edmund C. Lynch. Under the trusts each child acquires an absolutely vested interest in one-third of the trust fund. The same result follows under the will if all three of the children survive the widow. Under the will if one of the three children dies before the widow, and leaves no issue, his share goes to the two surviving children.

(2) As regards unborn issue of the three minor children, under the trust indentures they will benefit only by their parents receiving the trust estates. This is also true under the will, except that in case one of the minor children dies before the widow leaving issue which survives the widow, such issue will take the deceased parent's share directly.

The principal difference between the two schemes of disposition is that the will does, and the trusts do not, provide for remote contingent remainders to the widow, mother and sister, and still more remote contingent remainders to uncles, aunts and cousins.

Both groups of plaintiffs, not only the trustees under the *inter vivos* trusts but also the executors, take the position that the renunciations should be held valid. This is because they contend: (1) that the renunciations are valid under well-established principles of law; (2) that holding the renunciations valid will give effect to the clear intention of Edmund C. Lynch, whereas a contrary decision would unjustly defeat his intention; (3) that giving effect to his intention will violate the rights of no one.

The defendants include all those who will take under the trusts if the renunciations are held valid or under the will if the renunciations are held invalid. They are all members of the family. None of them who is in being and of age has appeared in opposition to the prayer of the complaint that the renunciations be upheld.

So far as the three minor children of Edmund C. Lynch are concerned, it is obvious that their interests will be far better served by upholding the renunciations. The guardian appointed for them by this court takes this position and joins in asking for the relief prayed for in the complaint. The guardian appointed for the minor cousins under fourteen and also for the unborn issue of the three Lynch children, and the guardian appointed for the minor cousins over fourteen (at least as to three of the trusts) contend that the renunciations should be held invalid. The interests of the wards on behalf of whom these contentions are made are all contingent.

The grandparents sought first to provide for their son, Edmund C. Lynch, to take care of him by giving him the entire income of the trust funds so long as he should live. They placed implicit trust in him, and gave him what amounted to an absolute and uncontrolled discretion, by will or codicil, to bestow the principal of the trust funds upon any person or persons, institutions or corporations.

Nevertheless, even at that time, when their son either had no children or one baby, the grandparents unmistakably contemplated the probability of his later having children who would survive him, and they expressly bestowed the principal of the trust funds, subject to his exercise of the power of appointment, upon his children him surviving, in equal shares, and continued the trusts for their benefit in equal shares, until they should attain specified ages.

At the time the grandparents made the indentures, when the son had no children or one baby girl, they may have regarded the powers of appointment granted to the son as of importance; but, as the son's children successively came into being, the expressed intent of the grandparents to take care of them by giving them the trust funds absolutely became of first importance, and any

necessity for the exercise by the son of the power of appointment departed, because such exercise might divert the funds from the family and, to the extent of such diversion, frustrate the intent of the grandparents to provide for their son's children.

The fact that the grandparents, in their indentures, clearly had their grandchildren in mind if, as and when born, and intended that the principal of the trusts should be theirs, is seen in the care with which they went out of their way to protect them: (1) in that they contemplated that an appointment by Edmund C. Lynch might not be sufficient or effective, and after using the words " in default of such direction or appointment," expressly added, " or in so far as such direction or appointment may not extend or be effectual; " (2) in that they not only directed a division of the trust fund into as many equal shares as there should be lawful children of Edmund C. Lynch living at the time of his decease, but set up separate trusts for each child until he or she should reach a given age, at which time the trustees were directed to transfer and deliver the equal shares of the principal of the trust fund to such child on the specified birthday; (3) in that they carried their gift another step further, making it clearly a family matter by providing that the term " children " should be construed to include the issue of any deceased child, *per stirpes* and not *per capita.*

Similarly, the acts of the son, after consulting with his mother, in releasing the powers of appointment, as if such powers had never been granted, were acts directly carrying forward the intent and provisions of the grandparents for the benefit of the family, and enabled their intention and provisions for the benefit of their grandchildren to be fully performed.

The result of giving effect to Edmund C. Lynch's releases of August 12, 1935, as he expressly intended, is not that the remainders given by Edmund C. Lynch's parents to his children would thereby vest by virtue of these instruments of his. On the contrary, the remainders in the children of Edmund C. Lynch vested by virtue of the original indentures executed by their grandparents, subject only to be divested by any effective exercise by Edmund C. Lynch of the powers. (Real Prop. Law, § 41.) The release of the powers confirmed the remainders vested in the children of Edmund C. Lynch; it did not create them.

By reason of these facts, the son's releases, which are wholly valid and should be upheld in and of themselves, are inherently family transactions. Just as the courts, in construing wills, have uniformly adopted an interpretation which prefers those of the blood (*Wood* v. *Mitcham,* 92 N. Y. 375, 379; *Matter of Rooker,*

248 id. 361, 364), so also, the courts have declared that a family transaction especially commends itself to a court of equity, and that they will look to the equitable circumstances in each case and will not apply technical principles which might pertain to the case of parties dealing at arm's length. (*Gratz* v. *Cohen*, 11 How. [52 U. S.] 1, 18; *New York Life Insurance & Trust Co.* v. *Conkling*, 159 App. Div. 337, 343.)

Those provisions, reduced to their simplest terms, conferred powers upon Edmund C. Lynch, as grantee or donee, to appoint by will to any person whatever, with remainders over in default of their exercise.

It cannot be disputed that the powers are what the statute law of New York defines as " general beneficial powers of appointment " as distinguished from " special powers " or " powers in trust." (Real Prop. Law, §§ 133, 134, 136; *Cutting* v. *Cutting*, 86 N. Y. 522; *Hume* v. *Randall*, 141 id. 499; *Deegan* v. *Wade*, 144 id. 573.)

Where a grantor, donor or testator confers upon someone, let us say the life beneficiary, the absolute power to appoint the estate or fund by will to any person whatsoever, the grantee or donee has a general power. It is also a beneficial power because " no person, other than the grantee, has, by the term of its creation, any interest in its execution." (Real Prop. Law, § 136.)

The nature of such a power is described in *Cutting* v. *Cutting* (*supra*, at p. 543): " It is a power to appoint by will, to whom the estate shall go, after the decease of the donee of the power. The choice of the future beneficiary is left to the judgment, to the inclination, nay even to the caprice of the donee of the power. A court of equity cannot frame a decree that can direct the execution of such a power for it cannot determine for the donee of the power who shall be the object that his judgment, inclination or caprice may select or turn to as the recipient of the estate. * * * Now there is nothing in the article ' of powers,' that looks to the compelling of the execution by the grantee of a power that is general and beneficial. * * * Whether, then, the power will ever be executed is an event which may or may not happen."

In other jurisdictions, general beneficial powers have also been called " powers in gross." In that respect they are to be distinguished, on the one hand, from " powers appendant " (*i. e.*, where they enable the grantee to create an estate to take effect in whole or in part out of his own interest), and " powers simply collateral " (*i. e.*, where they are vested in a stranger having no interest in the property); and on the other hand, from powers coupled with a trust. But we need not deal with common-law

refinements of classification because the distinction which applies to this case is a well-settled one, between a general beneficial power, on the one hand, and a special power coupled with a trust, which is an entirely different thing.

In *Lyon* v. *Alexander* (304 Penn. St. 288; 156 A. 84) the court said: " We think it profitless to review the cases defining the various kinds of powers or to enter upon even a summary of the distinctions which have been drawn. For all practical purposes there may be said to be two marked differences in powers of appointment; they can be summarized as general and special powers. The general are those in which the donee of the power may appoint to any one, and the special, in which the donee of the power is restricted to passing on the property to certain specified individuals or to a specific class of individuals. * * * Where the power is a general one * * * there is neither a trust nor an obligation in the nature of a trust because the power is not coupled with a duty."

Contrasted with the general power is the special power, whereby the grantor or testator restricts the appointment to a class or group, or provides that the grantor may appoint in different amounts, etc.

In this case we are not concerned with special powers, but reference is made to the contrast in order to distinguish the cases which have dealt with special powers. The distinction between a general power and a special power is that a general power may be exercised in favor of any one, whereas a special power may be exercised only in favor of a limited group or class. (1 Simes, Law of Future Interests, p. 431.)

A general power of appointment is never coupled with a duty to make the appointment. A special power may be either discretionary or it may be coupled with a duty. A special power is discretionary if its exercise or non-exercise depends wholly on the volition of the grantee. Such a power exists when the grantor or testator has himself given remainders in default of appointment. (Real Prop. Law, § 157; *Waterman* v. *New York Life Ins. & Trust Co.*, 237 N. Y. 293.) A special power is coupled with a trust duty when its exercise is obligatory on the grantee. Such a power exists where a grantor or testator, by failing to make his own disposition of the property in default of appointment, leaves it to the grantee to appoint remainders among a special class or group under such circumstances that the grantee, either expressly or by necessary intendment, is charged with a duty of creating these remainders.

In this third class of cases a court of equity will execute the power if the grantee fails to do so, just as it will not suffer a trust to fail

for want of a trustee. (Real Prop. Law, § 160.) Special powers coupled with a trust belong to the jurisdiction of equity and involve trust duties and obligations. General beneficial powers are analogous to ownership.

Such a basic distinction has a variety of legal consequences. One consequence is the settled law that a general beneficial power may always be surrendered by the grantee and thus extinguished; whereas, a special power if coupled with a trust and, therefore, involving a duty to act, may not be surrendered and, if the grantee fails to appoint, will be performed by the courts.

The Court of Appeals, in a series of cases, has cleared away many discrepancies and entanglements of case law by analyzing the documents and basing its decisions on the intent of the parties. (*Waterman* v. *New York Life Ins. & Trust Co.*, 237 N. Y. 293; *Matter of Winburn*, 265 id. 366; *Matter of Bloomingdale*, 278 id. 435; *Matter of Kennedy*, 279 id. 255; *Matter of Fletcher*, 280 id. 86.)

Turning to the powers now under consideration, several things are, as demonstrated in the brief of the guardian *ad litem* for the children of Edmund C. Lynch, obvious: (1) The power is a general, discretionary, beneficial one. In no respect is it a power in trust, either in its inherent nature or under any statutory definition. (2) Edmund C. Lynch's father and mother, the grantors of the power, intended that their son, the grantee, should be absolutely free in his exercise or non-exercise of the power. No one could compel him to exercise it; no one could prevent him from exercising it if he chose. The powers necessarily contemplated two alternatives, his exercise of the powers and his non-exercise of the powers. They could be exercised only by will, taking effect at his death, because exercise by deed or mortgage would be inconsistent with the grant of a power to be exercised by will. They could be non-exercised in a variety of ways, either by inaction, or by instrument of surrender — such formal instrument being wholly consistent with non-exercise. In this case, because Edmund C. Lynch had already made a will and codicil, in form, exercising the powers, it became necessary to have formal instruments to effectuate non-exercise. These instruments could have been either instruments of surrender of the powers or a new will or codicil. Edmund C. Lynch, for reasons which were good and sufficient, elected to make his non-exercise certain and unassailable by executing formal instruments of surrender. He carried out one of the two alternatives contemplated by his parents. His intention is express, without possibility of equivocation — final and conclusive. (3) Edmund C. Lynch's parents expressed their perfectly definite intentions as to the disposition of the capital of the funds in favor

of his children in case he did not effectively exercise the privilege of appointment or if he formally surrendered the powers. In giving effect to the son's intention as expressed in his surrender of the powers, this court will merely be carrying out the expressed intention of his parents in creating the trust for his benefit' and giving the principal of the trusts to his children and continuing the trusts until they reach the specified ages.

Each of the foregoing considerations which have been enumerated has a direct bearing on the right of the grandparents' trustees, the son's executors and the son's children to the judgment which they unite in asking.

It is settled law that a person may renounce a bequest or devise and refuse to accept it. This right is not denied or forbidden by statute and is recognized by the authorities. (*Burritt* v. *Silliman,* 13 N. Y. 93, 96; *Beekman* v. *Bonsor,* 23 id. 298; *Albany Hospital* v. *Albany Guardian Society,* 214 id. 435; *Matter of Wolfe,* 89 App. Div. 349, 354; *Matter of Merritt,* 155 id. 228, 232.) The gift being for his own benefit, no statute compels him to accept the same. Likewise, in the case of general beneficial powers, no statute says that they must be exercised, and no statute provides that they may not be released and extinguished by the donee.

The court has referred to the basic distinction between general beneficial powers and special powers coupled with a trust, and pointed out that the latter are an exception to the general rule that the grantee of a power to appoint may release his power and thereby extinguish it. As a matter of fact, there is no such thing as a general power of appointment coupled with a trust. The reason why there can be no such thing as a general power coupled with a trust is that it is inherent in the nature of a power coupled with a trust that the trust duty be enforcible by the potential appointees. If the potential appointees include the whole world, then, for obvious reasons, no one has a right to enforce the power. Moreover, the effective exercise or non-exercise of a general power depends solely on the will or even the caprice of the grantee.

Thus, it is settled law in all jurisdictions, including New York, that general beneficial powers may be surrendered, released or renounced by the grantee and thereby extinguished. (Farwell on Powers [3d ed.], p. 16; 1 Simes, Law of Future Interests, pp. 494, 498, 500; Restatement, Property, § 457; *Albany's Case,* 1 Co. Rep. 110-b, 113-a; *West* v. *Berney,* 1 Russ. & M. 431; *Smith* v. *Death,* 5 Mad. 371; *Barton* v. *Briscoe,* Jac. 603; *Matter of Mills,* [1930] 1 Ch. 654; *McFall* v. *Kirkpatrick,* 236 Ill. 281; 86 N. E. 139; *Johnson* v. *Harris,* 202 Ky. 193; 259 S. W. 35; *Langley* v. *Conlan,* 212 Mass. 135; 98 N. E. 1064; *Lyon* v. *Alexander,* 304

Penn. St. 288; 156 A. 84; *Towler* v. *Towler*, 142 N. Y. 371; *McEvoy* v. *Central Hanover Bank & Trust Co.*, 274 id. 27, 33; *Newton* v. *Hunt*, 59 Misc. 633; modfd., 134 App. Div. 325; *Sperry* v. *Farmers' Loan & Trust Co.*, 154 id. 447.)

Farwell on Powers, the leading English authority, states (at p. 16) that at common law. " all powers, other than powers collateral and powers coupled with a trust or duty might have been　*　*　* suspended or destroyed, either wholly or in part, by the donees thereof." In the instant case we are not involved in " powers collateral " or " powers coupled with a trust or duty."

Simes, the most recent American text writer on the law of future interests, states (at p. 494): " The English law, before the statutory modifications of 1881, was, as stated by Farwell　*　*　*. And, as we shall endeavor to show, the present American law is to the same effect. Thus it is possible to destroy a power in gross, not only by a tortious conveyance in fee, but also by a release." Later, Simes states (at p. 500): " All powers in gross except powers in trust are extinguishable."

Section 457 of the Restatement of the Law of Property, adopted May 13, 1938, provides: " All general powers of appointment can be released by the donee." A note on the " Scope of application of rules " reads: " The rule stated in this section applies to all general powers, including powers presently exercisable and testamentary powers. It applies even though the donor in specific language declares that the power shall not be released; for the rule permitting release of general testamentary powers presupposes that the donor's intent to postpone the exercise of the donee's discretion does not prevent release. The rule is also applicable whether or not the donee has any owned interest in the land or other thing over which the power exists — that is, whether the power is one which is designated as ' simply collateral ' or ' in gross.' "

The Reporter and Advisers were in disagreement only as to the line of demarcation between the special powers which are releasable and those which are not. It is significant that there was complete unanimity as to the releasability of general powers. Thus, Messrs. Powell and Simes, in a memorandum relating to section 458 (Releasability of special powers), state: " The Reporter and Advisers are in complete agreement upon two propositions, namely, that all general powers of appointment are releasable and that special powers are sometimes releasable and sometimes not releasable." (Tentative draft No. 7, p. 158.)

Unquestionably, general beneficial powers to appoint by will, whatever called, come well within the limits of the settled rule fully authorizing surrender and extinguishment. The principle

stated by the text above referred to is established by an unbroken line of English and American authorities.

Commencing with *Albany's Case* (*supra*), which held that a general power of appointment was extinguished by a release to a feoffee for uses, no authority has ever logically contended that a general beneficial power could not be surrendered. That is why later English cases have dealt mainly with the surrender and extinguishment of special powers.

In *West* v. *Berney* (*supra*) the court held (at p. 435): "Every power reserved to a grantee for life, though not appendant to his own estate, as a leasing power, but to take effect after the determination of his own estate, and therefore, in gross, may be extinguished."

In *Matter of Mills* (*supra*) the court stated (at p. 665): "As regards a power in gross it is firmly established that such power may be released by the donee, even though the release be for his own benefit."

The American cases (*supra*) are to the same effect.

In *McFall* v. *Kirkpatrick* (*supra*) the grantor conveyed certain real estate to a trustee in trust to pay the net rents to Eliza J. Houston for life and, on her death, to convey the land " to such person or persons as she * * * by her last will and testament * * * shall * * * direct and appoint," and, in default of such appointment, to her heirs and assigns. The life beneficiary and donee of the power sold and conveyed the property, and thereafter made a will devising the property to her brother. Under Illinois law, this raised the question whether the power could be extinguished. The court held that the power had been extinguished by the sale and the purported execution of the power by will was of no effect. It said (at pp. 299–300): " The power was an authority to dispose of the remainder for the benefit of any person she might choose and to declare in whom and in what manner the title should vest at her death. It was not limited or special and it was not a power in the nature of a trust, which she was bound to exercise either in favor of some particular person or class of persons. The deed created no fiduciary relation between Eliza J. Houston and any person or class of persons, and the exercise of the power being appendant to her estate, she could not be permitted to defeat the estate conveyed by her by afterwards exercising the power." The court also noted (at p. 300) that " if the power was extinguished by the execution of her deed it was extinguished forever."

In *Johnson* v. *Harris* (*supra*) the grantor devised real estate to his widow for life, remainder to his two daughters. The will

provided that, if either of them predeceased the life tenant, her share " will pass as directed by my wife, who is hereby given full authority to dispose of such part of my estate by will, the same as fully as if she had the fee simple title to such estate." The widow and the daughters contracted to sell the property, but the purchaser refused to take title because of the power. The court held that the power could be extinguished, holding (at p. 196): " The power is one in gross and not collateral. The mother was not required nor was she under duty to exercise it. She had the privilege of doing so, but if she failed to exercise the power the shares passed to the heirs of the daughter. It seems well settled that a power of appointment, as in this case, given to the life tenant to appoint by will is a power in gross and not a power collateral, or a power coupled with a trust or duty; and such a power may be extinguished by the donee. Any dealing with the property which is the subject of a power inconsistent with the exercise of such power will operate as an extinguishment of the power."

In *Lyon* v. *Alexander* (*supra*) a testatrix devised certain real estate to her daughter for life, and after her death to the testatrix's oldest son who should then be alive and his heirs. The will provided that if the daughter should outlive all the sons, " then I empower her by her last will to devise said property as she sees proper." The court held that the daughter could release and thereby extinguish the power of appointment. The court also said (at p. 291): " Where the power is a general one under which the donee may appoint to anyone, the testator has completely relinquished all dead hand dominion over the property and has placed it for all practical purposes as completely within the control of the donee of the power as though a fee had been created in him. There is neither a trust nor an obligation in the nature of a trust because the power is not coupled with a duty. Recognition of the right to extinguish a general power of appointment began as early as the decision of Lord Coke in *Albany's Case*, 1 Coke's Reports 107A (1585) and has been the doctrine in England substantially from that time to the present. * * * The right of the donee of a general power to extinguish it by deed is recognized in the comparatively recent decision of the Supreme Court of Illinois in *Baker* v. *Wilmert*, 288 Ill. 434. The release or extinguishment of the power may take any form. It may be by a contract or by deed: *Baker* v. *Wilmert*, 288 Ill. 434; *Atkinson* v. *Dowling*, 33 S. Carolina 414; and as indicated in these two cases and in *Brown* v. *Renshaw*, 57 Md. 67, may be implied from a covenant of general warranty."

The New York law as to general beneficial powers is to the same effect. (*Newton* v. *Hunt*, 59 Misc. 633; modfd., 134 App. Div. 325; *Sperry* v. *Farmers' Loan & Trust Co.*, 154 id. 447; *Towler* v. *Towler*, 142 N. Y. 371; *McEvoy* v. *Central Hanover Bank & Trust Co.*, 274 id. 27, 33.)

In *Newton* v. *Hunt* (*supra*) it appeared that in July, 1872, the grantor, Mrs. Hunt, made a trust deed for her life, with power, in herself, to distribute the remainder as she should appoint. In November, 1879, she executed a second instrument, whereby she exercised this power to a limited extent but reserved the special power to appoint to her children in unequal shares. In July, 1898, she executed a mortgage in which she attempted to release this last power to appoint to her children in unequal shares. In other words, the power sought to be released in July, 1898, was in favor of specific children who had become interested in the estate by the instrument of November, 1879. BISCHOFF, J., held that the issue was as follows (at p. 638): " The inquiry is whether the power sought to be released was a general beneficial power or a power in trust. If the former, it could be released; if the latter, the attempted release was inoperative."

There being no question that the power to appoint remainders among living children was a special power in trust, and not a general beneficial power, Judge BISCHOFF summed up as follows (at p. 640): " I hold, therefore, that the mortgage operated to convey the remainder interests * * * subject to the existing power of Mrs. Hunt to appoint the remainders unequally among her children."

In *Newton* v. *Hunt* (*supra*) the court thus enumerated the precise distinction which is here determinative. The Appellate Division voted two-to-two on the question, which necessarily meant that two judges were willing to vote that even a special power in trust might be surrendered. Obviously, all four judges would readily have voted with Judge BISCHOFF that a general beneficial power could be surrendered. They disagreed two and two only on his holding that a special power in trust could not be surrendered.

*Sperry* v. *Farmers' Loan & Trust Co.* (*supra*) was an action for a partial revocation of a trust under section 23 of the Personal Property Law. The trust sought to be revoked contained a general beneficial power whereby the life beneficiary was empowered to appoint the principal by will to any person whomsoever. The court held that the life beneficiary was the only person interested who could revoke the trust and renounce the power. It said (pp. 450–451): " There certainly is no other person now in existence or who can now be identified who is so interested either presently or in future. Under

the terms of the deed of trust the corpus of the trust estate is to go, at plaintiff's death, to the appointee or appointees named in her last will. Until she dies, therefore, leaving a last will, the person or persons to receive the property after her death must remain unknown and legally non-existent. * * * There is, therefore, no person now existent and who can be identified, save the plaintiff, who can in any proper sense be termed a beneficiary under the deed of trust, because there is no person who can claim to be entitled, after plaintiff's death, to receive the fund under the terms of the trust, nor can there ever be such person except by the voluntary act of the plaintiff in making an appointment by her last will."

The court continued (at p. 452): " No one is entitled to be appointed to receive the corpus, and no one ever can receive it under the terms of the trust deed unless the plaintiff of her own free will elects to appoint them to be the recipients. She certainly can renounce the power to do that which she is under no compulsion ever to do, and if she renounces the trust as to the $10,000 which she now seeks to withdraw from its operation, she will have renounced, as to the sum so withdrawn, the power to appoint a person or persons to receive it after her death."

In *Towler* v. *Towler* (*supra*) plaintiffs' father had conveyed to them real property in fee subject to a life estate in himself, and also subject to a reserved power to appoint by deed or will a life estate in an undivided third of the property to any wife whom he might thereafter marry. The father died leaving a widow, but without exercising the power. His widow claimed that the power was a special imperative trust power and its performance should be decreed in equity. The Court of Appeals held (at p. 374): " We think that this reservation in the deed at most created nothing more than a mere power, not coupled with any trust. It is not a special imperative trust power within the meaning of the statute, but a power which the grantor reserved, and could execute or not at his pleasure. He could not have been compelled to execute it in his lifetime, and had he before his death conveyed all his interest in the estate to the plaintiffs they would have taken the whole title in fee simple, unfettered by any trust or interest of any kind in favor of the defendant. An instrument creating a power, like all other instruments, must receive a reasonable construction, and the intention of the party executing the instrument is to be ascertained from the language used, the situation of the parties, and all the surrounding circumstances. * * * Applying these rules of construction to the reservation in the deed, we think that the grantor never intended to and did not in fact create a special trust power which was imperative within the meaning of the

statute." And again (at p. 376): " It is only when the power is a trust that a court of equity will decree the execution. That this was a mere power reserved, uncoupled with any trust, is shown by the fact that the deceased husband could have extinguished it by conveying his life estate to the children already entitled to the remainder. (4 Kent Com. 347.) "

In *McEvoy* v. *Central Hanover Bank & Trust Co.* (*supra*) the settlor had entered into a separation agreement with his wife, and, to secure payment of a fixed monthly sum for her support, had executed a bond and mortgage to be held in trust and on the death of the wife to be surrendered to the husband. The agreement further provided that the husband should have the power to substitute for the bond and mortgage $50,000 in cash and securities and, if the substitution was made, payments to the wife should be made from the income and excess income should be paid to the husband, with remainder to his lawful issue, *per stirpes*, and in default of issue to whomever he might appoint by will.

In a proceeding to revoke the trust, the question was whether the issue of the settlor were necessary parties defendant. The Court of Appeals held that they were not; that, in the absence of an effective execution of the power, " no interest was granted and no interest was intended to be granted to the children " and they had " no beneficial interest, not even a contingent one," and it expressly based its holding on the fact that the settlor had renounced the power to substitute cash or securities for the bond and mortgage and thus bring the alternative provisions of the trust indenture into operation. The Court of Appeals specifically declared (at p. 33): " By the bringing of this action, the settlor renounced the power to do that which always depended upon his voluntary act. The language of SCOTT, J., in a somewhat similar case is applicable: ' No one is entitled to be appointed to receive the corpus, and no one ever can receive it under the terms of the trust deed unless the plaintiff of her own free will elects to appoint them to be the recipients. She certainly can renounce the power to do that which she is under no compulsion ever to do * * *.' (*Sperry* v. *Farmers' Loan & Trust Co.*, 154 App. Div. 447, 452.) "

There can be no question that the powers granted to Mr. Lynch fall squarely within the settled principle established by this uniform line of authorities both in New York State and other jurisdictions, and that the effect of the formal surrenders, dated August 12, 1935, was to extinguish the powers, as Edmund's parents clearly contemplated and as Edmund, by formal express instruments, made manifest.

In the great majority of cases, grantors and testators have not seen fit to grant general powers, but, quite normally and naturally, have preferred to give special powers to be exercised in favor of a limited class, such as the grantor's or grantee's children or issue, or charities or specified individuals, giving to the grantee power to select which of the class shall receive the property and decide on the shares and proportions which they shall take.

The obvious result has been that the greater part of the litigation in England and America has to do with extinguishment of special powers as distinguished from the extinguishment of general powers; the rule, as we have seen, being absolutely unanimous that a grant of general powers may always be surrendered and extinguished.

As to special discretionary powers not coupled with a trust, it is a perfectly fair statement to say that the law in every jurisdiction, which does not have a statutory provision identical with section 138 of the New York Real Property Law, is that they may likewise be surrendered, renounced or released, and thereby extinguished, and the New York law now appears to be the same, despite the reasoning of the Appellate Division in *Chase National Bank* v. *Chicago Title & Trust Co.* (155 Misc. 61; affd., 246 App. Div. 201; affd., 271 N. Y. 602).

The extinguishment of the powers clearly operated to nullify Edmund C. Lynch's purported execution of them in his will and codicil, because they left nothing on which the provisions of the will and codicil could operate. (*McNaughton* v. *McNaughton*, 34 N. Y. 201; *Matter of Sinnott*, 163 App. Div. 817; affd., 214 N. Y. 667.)

The renunciations, under the Decedent Estate Law, were effective to revoke the provisions of the will and codicil which purported to exercise the powers.

Edmund C. Lynch, by his will and codicil, did two things: He disposed of a large personal estate of his own. He also, in form, exercised the powers to appoint under the trust indentures now before the court (as well as powers of appointment conferred by two other instruments not here material).

In his will he specifically referred to the six trust indentures by painstaking designations. In his renunciations of the powers he incorporated precisely the same designations, so that, as a matter of fact, there can be no possible question but that he was dealing with the powers, under the specified indentures both in his will and in his renunciations, and that, and also as a matter of fact, he was dealing with them in a wholly different, inconsistent and antagonistic manner in the two instruments.

The material sections of the Decedent Estate Law are as follows:

" § 34. Revocation and cancellation of written wills. No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed."

" § 39. Conveyance, when not to be deemed a revocation. A conveyance, settlement, deed, or other act of a testator, by which his estate or interest in property, previously devised or bequeathed by him, shall be altered, but not wholly divested, shall not be deemed a revocation of the devise or bequest of such property; but such devise or bequest shall pass to the devisee or legatee, the actual estate or interest of the testator, which would otherwise descend to his heirs, or pass to his next of kin; unless in the instrument by which such alternation is made, the intention is declared, that it should operate as a revocation of such previous devise or bequest.

" § 40. Conveyance, when to be deemed a revocation. But if the provisions of the instrument by which such alteration is made, are wholly inconsistent with the terms and nature of such previous devise or bequest, such instrument shall operate as a revocation thereof, unless such provisions depend on a condition or contingency, and such condition be not performed, or such contingency do not happen."

Edmund C. Lynch, in his will, in attempting to exercise the power of appointment under the indentures, used the following language:

" Article VI. I give, bequeath and devise any and all property, real or personal, over which I may have the power of appointment at the time of my decease, under the provisions of a trust agreement dated August 8, 1925, between Jennie V. Lynch, as Grantor, and Charles E. Merrill and Albert F. Jaeckel, as Trustees, a trust agreement dated August 13, 1925, between Richard H. Lynch, as Grantor, and Charles E. Merrill and Albert F. Jaeckel, as Trustees, a trust agreement dated April 3, 1926, between Jennie V. Lynch, as Grantor, and Charles E. Merrill and Beverly W. Smith, as Trustees, a trust agreement dated April 3, 1926, between Jennie V. Lynch, as Grantor, and Charles E. Merrill and Albert F. Jaeckel, as Trustees, a trust agreement dated April 3, 1926, between Richard H. Lynch, as Grantor, and Charles E. Merrill and Beverly W. Smith, as Trustees, a trust agreement dated April 3, 1926, between Richard H. Lynch, as Grantor, and Charles E. Merrill and Albert F. Jaeckel, as Trustees, etc."

Each of the six releases which he executed on August 12, 1935, were in the following form: " I, Edmund C. Lynch * * * do hereby renounce and relinquish the power of appointment by my last will and testament or any codicil thereto granted to me under [describing each respective trust indenture in the same way as they had been described in the will]; intending by this renunciation to divest myself completely of all rights and privileges granted to me by such power of appointment as if such power of appointment had not been granted."

In the will he referred to all of the indentures in a single paragraph. In his six releases he referred to each of them separately. In Exhibit 3-J he renounces and relinquishes the power of appointment granted to him under paragraph 3 of a certain indenture of trust from Jennie V. Lynch, grantor, to Charles E. Merrill and Albert F. Jaeckel, trustees, dated August 8, 1925. In Exhibit 3-D he renounces and relinquishes the power of appointment granted to him under paragraph 3 of a certain indenture of trust from Jennie V. Lynch, grantor, to Charles E. Merrill and Albert F. Jaeckel, trustees, dated April 3, 1926. In Exhibit 3-C he renounces and relinquishes the power of appointment granted to him under paragraph 3 of a certain indenture of trust from Jennie V. Lynch, grantor, to Charles E. Merrill and Beverly W. Smith, trustees, dated April 3, 1926. In Exhibit 3-R he renounces and relinquishes the power of appointment granted to him under paragraph 3 of a certain indenture of trust from Richard H. Lynch, grantor, to Charles E. Merrill and Albert F. Jaeckel, trustees, dated August 13, 1925. In Exhibit 3-B he renounces and relinquishes the power of appointment granted to him under paragraph 3 of a certain indenture of trust from Richard H. Lynch, grantor, to Charles E. Merrill and Albert F. Jaeckel, trustees, dated April 3, 1926. In Exhibit 3-E he renounces and relinquishes the power of appointment granted to him under paragraph 3 of a certain indenture of trust from Richard H. Lynch, grantor, to Charles E. Merrill and Beverly W. Smith, trustees, dated April 3, 1926.

Edmund C. Lynch's intent is not even left to inference. The instruments expressly state what his intent was, namely, to *not* exercise the powers and to divest himself completely of all rights and privileges granted to him by the powers " as if such powers of appointment had not been granted." These documents show on their face, and prove as a fact, that they revoked the provisions of the will which purported to exercise the powers. These documents were not testamentary in character and, therefore, do not fall within section 34 of the Decedent Estate Law. That section, however, has nothing to do with this case.

In the first place, it is well settled that the statutory prohibition does not prevent the ademption of testamentary provisions where the testator in his lifetime has disposed of the property bequeathed. In the second place, section 34 expressly excepts " the cases hereinafter mentioned," thereby specifically referring to the cases enumerated in sections 39 and 40. Thirdly, the instruments of August 12, 1935, come within the provisions of sections 39 and 40 of the Decedent Estate Law, and, by virtue of the statute, operated to revoke the will *pro tanto;* that is to say, to leave intact the testator's provisions as to his own large estate and to revoke " expressly " (under section 39) and certainly as " wholly inconsistent " (under section 40) the provisions made under the powers.

No documents could be more inconsistent with one another than the renunciation instruments and the will. Quite obviously, an instrument which renounces and releases a power of appointment with the intention of completely divesting all. rights and privileges as if such power had not been granted is on its face wholly inconsistent with the terms and nature of a bequest which expressly states that it makes the appointment solely under the powers thus renounced, if the testator " may have " such powers " at the time of " his decease.

Also, the instruments in their necessary effect declare an intent to revoke the previous bequests, and thus bring this case within the exception set forth in section 39, as well as within the provisions of section 40. The provisions of the instruments executed by Mr. Lynch do not depend upon any condition or contingency. They are " wholly inconsistent with the terms and nature " of the attempt in the will to execute the powers. It follows that, under the statute, these instruments " operated as a revocation thereof." (*Holmes* v. *Coghill,* 7 Ves. Jr. 498, 505; affd., 12 id. 206; *Reid* v. *Shergold,* 10 id. 370, 379; *Walker* v. *Steers,* 14 N. Y. Supp. 398; *Titus* v. *Bassi,* 182 App. Div. 387; *Matter of Loeb,* 155 Misc. 863.)

In *Holmes* v. *Coghill* (*supra*) a testator made a will which purported to execute a general power of appointment. Thereafter he released the power. The court held that " the power itself being gone before his death, the will had nothing to operate upon."

In *Reid* v. *Shergold* (*supra*) the grantor conveyed land in trust to pay the rents to his niece for life, remainder as she should appoint by will. The niece made a will exercising the power. Thereafter she attempted to surrender the property, so as to convey the entire fee to a purchaser. Because of the fact that it was a copyhold estate, in which she had only a life interest with power to appoint by will, it was held that the instrument only passed a life estate. She never changed her will, and on her death the appointee under

the will claimed the property. The court held (at p. 380): "Then she makes a will; observing that she has an interest and an authority; and stating her intention to be, that this estate after her death, shall go by virtue of her power. Afterwards, having the whole legal estate, she surrenders the whole to the use of a person, who according to the meaning expressed is to take an interest, not only inconsistent with, but directly contrary to the intention expressed. The question is, whether that is not an effectual instrument to denote an intention, that the will shall not stand. Under the circumstances, I think, that surrender was a revocation. The consequence is, that the person, who has the legal estate, is a trustee for the person, who would have taken, if that will had not been made." In other words, the court held squarely that an instrument inconsistent with an execution of a power of appointment contained in a previous will necessarily operated to revoke the provisions of the will in execution of the power.

In *Walker* v. *Steers* (*supra*) the revocation was effected by an inconsistent partnership agreement. The testator bequeathed to one Saville, his partner, an undivided half interest in certain patents on condition that he carry on the business of making and selling machinery under the patents for ten years after his decease and pay over half the net profits to a certain church, he to become the absolute owner of the patents at the end of ten years. After the will was made, Saville and the testator executed a partnership agreement which provided for manufacturing and selling machinery under the same patents for a term of five years and that if either partner died the survivor should continue to operate under the agreement for the balance of the term, then the patents to become the sole property of the survivor. The testator did not thereafter change his will. The court held that the subsequent agreement was wholly inconsistent with the will and revoked the bequest of the patents within the provisions of the Revised Statutes (R. S. pt. 2, chap. 6, tit. 1, art. 3, § 48, now Dec. Est. Law, § 40). In this case the partnership agreement did not wholly divest the testator of his property and section 39 would have governed except for the inconsistency. This was pointed out by the court, which held (at p. 401): "Although the testator was not wholly divested of his interest in the property, still the contract, if valid, could operate as a revocation if its provisions were wholly inconsistent with the terms and nature of the bequest." The court said (at p. 402): "It may therefore be well said that the provisions of the contract are wholly inconsistent with the terms and nature of the bequest. There would seem to be no doubt about the intention of Steers. * * * Very clearly the design of Steers was that the contract should take the place of the provisions of the will."

In *Titus* v. *Bassi* (*supra*) the revocation was effected by a separation agreement. The testator made a will in 1903, whereby he gave his residuary estate to his wife. In 1911, eight years after he had made the will, he and his wife separated and entered into a separation agreement which made financial provision for the wife in lieu of any claims which she might have against her husband or his estate and contained various recitals and provisions which were inconsistent with the will. The testator died four years later without having made a new will.

The trial judge held that the separation agreement was not an instrument prescribed by statute for the revocation of a will (Dec. Est. Law, § 34) and that sections 39 and 40 of the Decedent Estate Law did not apply to a residuary gift and, therefore, the will must stand. The Appellate Division unanimously reversed and squarely held that the case was " exactly within the provisions of section 40." It said (at p. 394): " The error of the learned trial judge below is in the statement that sections 34, 39 and 40 of the Decedent Estate Law (Consol. Laws, chap. 13; Laws of 1909, chap. 18) have no application to the present case. * * * The case appears to be exactly within the provisions of section 40, and the defendant, respondent's intention clearly appears."

The trial judge had relied on the fact that intention alone could not revoke a will. The Appellate Division said (at pp. 396, 397): " All this is aside from the fundamental question whether the provisions of the separation agreement and the deeds executed to effectuate it, were not ' wholly inconsistent ' with the provisions of the will devising the residuary estate to the wife in lieu of dower. If they were inconsistent, the residuary devise was revoked perforce section 40 of the Decedent Estate Law, when the separation agreement and the conveyance were executed in 1912. If the residuary devise was revoked then, it was dead and could not be revived save by a new will duly executed. * * * The question here is the intention of the parties when the agreement of 1912 was executed. Was not that agreement absolutely inconsistent with the provisions in her favor in the existing will? If so, those provisions were from thenceforth of no avail, and she must point to some other valid devise or bequest. And there is none. * * * This is not an ' implied revocation,' as claimed by respondent; it is an express revocation, as provided in section 40 of the Decedent Estate Law."

The court distinguished *Burnham* v. *Comfort* (108 N. Y. 535), saying (at p. 398): " The testator in the *Burnham* case did not execute any instrument whatever, let alone an instrument such as is mentioned in sections 39 and 40 of the Decedent Estate Law."

As already pointed out, the mere making of Edmund C. Lynch's will created no rights. His will must be read in the light of the situation existing at his death. As of that date, the powers were extinguished and he had executed written instruments " wholly inconsistent " with the terms and nature of the purported exercise of the powers contained in his will and codicil.

It is a matter of no legal consequence, in this action, that the Surrogate's Court has admitted Edmund C. Lynch's will and codicil to probate. That court was required so to do by the mandatory language of section 144 of the Surrogate's Court Act, despite any equitable consideration which might later require the will to be set aside in whole or in part. This was expressly held in *Matter of Higgins* (264 N. Y. 226) and in *Matter of Crosby* (136 Misc. 688).

In *Matter of Higgins* (*supra*) the husband and wife executed a joint will, the husband died, the joint will was probated as his will. Then the surviving wife executed a new will of her own, and died. Probate of this latter will was contested on the ground that the joint will was made pursuant to a contract. All courts sustained probate. The Appellate Division certified to the Court of Appeals the question whether the Surrogate's Court had " power " to withhold probate, and the Court of Appeals answered the question " no; " holding that the Surrogate's Court was required to probate the will, that its equitable powers, under section 40 of the Surrogates' Court Act, might not be exercised so as to make a decision contrary to express provisions of section 144; but that the equitable rights of the parties remained open for future decision in an appropriate proceeding.

In the *Crosby* case Mr. Surrogate FOLEY held that section 40 of the Surrogate's Court Act, with its comprehensive grant of equitable powers, does not confer jurisdiction on the Surrogates' Courts as to an *inter vivos* trust, as to the effectiveness of an attempted exercise by will of a power, given by *inter vivos* deed. As adjudicated in that case, the Supreme Court of the State of New York has exclusive jurisdiction of the subject-matter of this action.

The facts which the court deems essential have been found as noted on the margins of the findings and conclusions submitted by the respective parties. Judgment is awarded declaring that the renunciations described in the complaint of the powers of appointment are valid and effectual; that the last will and testament of Edmund C. Lynch, deceased, did not effectively exercise any of the powers of appointment described in the complaint; that the *inter vivos* trustees shall hold and administer the trust assets of each of the trusts J, D, R, B, C and E pursuant to the terms of the,

indenture creating each such trust on the basis that the power of appointment therein granted to Edmund C. Lynch, deceased, was not effectively exercised, and that the *inter vivos* trustees file herein the accounts of their proceedings, and that a referee to be named in the interlocutory judgment take and state the account and report thereon, together with his opinion, with all convenient speed, and that the parties recover their costs and disbursements. Settle decision and judgment.